## 36363. SOLOMON v. THE STATE.

UNDERCOFLER, Chief Justice.

Van Roosevelt Solomon appeals from the sentence of death imposed on September 27, 1979, following his conviction for the murder of Roger Dennis Tackett committed on June 17, 1979, in Cobb County, Georgia. Following conviction, the jury found the following aggravating circumstances; that the offense of murder was outrageously vile, horrible or inhuman in that it involved torture, depravity of mind, and an aggravated battery to the victim; and that the offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: armed robbery.

The state presented evidence authorizing the jury to find the following facts: The victim, Roger Dennis Tackett, was the manager of a Tenneco self-service gasoline station. Two employees, Linda Rosenfield and Carol Menfee, were working the evening shift and realized that they did not have the keys to lock the station when it closed at midnight. One employee talked to the victim by phone who then came into the station at 11:20 p.m. in order to lock the store after closing. After the station closed, the two employees left and the victim locked the station but remained to catch up on some paper work in order that he could be with his family the next day, which was Father's Day. At approximately 1:00 a.m., Linda Rosenfield drove by the Tenneco station and noticed the victim's car still parked in front of the store.

Early in the evening on the 16th of June, Jill Cindy Rhoda picked up her dinner date at an apartment complex located near the Tenneco station. She drove her date back to his apartment at approximately 12:30 a.m. They argued and her date took her car keys and went to his apartment. Ms. Rhoda contacted the police in order to get her keys back. Officer Kendle of the Cobb County Police Department accompanied her to the apartment complex, but she could not find her boyfriend's apartment. She did, however, remember his phone number. At approximately 1:50 a.m., the officer drove her to the Tenneco station in order to call and find out where the apartment was. When they arrived at the station, Ms. Rhoda went to use the pay phone. Officer Kendle noticed an unattended green Dodge automobile parked in front of the station with its door open and a loaf of bread in the front seat. As he went to investigate, he noticed a black male, later identified as Wilbur May, open the back storeroom door inside the station, quickly look out and then close the door. He found the front door of the station to be unlocked, drew his weapon, and proceeded inside. As he walked through the store, he heard three closely spaced shots, a pause, and then another shot. The

officer ordered the person in the storeroom to come out but did not get a response. He opened the door and standing near a walk-in cooler were two black males, Wilbur May and the appellant. He placed both persons under arrest and asked what they were doing there. The defendant said that "they were burglarizing." The officer handcuffed May, however, the officer was unable to cuff the appellant as he only had one pair of cuffs. The appellant was taken to the officer's patrol car and secured in the back seat. Wilbur May was then taken out of the store and was placed spread-eagle on the hood of the officer's patrol car. The officer then advised both the appellant and his co-defendant of their Miranda rights. A private security guard in the area who had heard the call for backup units arrived at the Tenneco station and helped to effectuate the arrest. Later, other units of the Cobb County Police Department arrived. Officer Kendle then had the police radio operator call the emergency number listed on the door of the Tenneco station. He learned that the victim was supposed to be in the store at the time. The officer and the security guard then broke into the back of the store using a crowbar. When they entered, they found the victim's body. He had been beaten and shot five times. There was a time interval of approximately twenty to thirty-five minutes between the arrest and the discovery of the victim's body. Near the body the officers found two guns, one of which still had the hammer cocked. One of the guns, a Colt .38 short revolver, had four spent rounds in the chambers. The other, a Smith & Wesson .38, had one spent round. Also, discovered near the scene, well hidden in underbrush, was a van that the appellant and his co-defendant were driving. It contained a large number of tools.

The appellant at the time of his arrest was wearing brown cotton gloves. As he was transported to the jail, he hid them in the patrol vehicle but they were later retrieved by the officer.

The appellant later gave a statement in which he said that he and Wilbur May had been driving around, and he wanted to show Mr. May the Atlanta area. He said that he did not know how the van got to the Tenneco station, because he was tied up in the back of the van by Mr. May. He stated that Mr. May untied him and made him go into the Tenneco station and put him into the cooler. He did not hear any sounds nor did he remember having gloves on. Both the appellant and his co-defendant were subjected to neutron activation tests, and both were determined to have recently fired weapons.

### Enumerations of Error.

1. In his first enumeration of error, the appellant contends that his retained trial counsel failed to render reasonably effective assistance in the trial of his case. Appellant advances eight acts or

omissions which he contends illustrate ineffective assistance of counsel. This court concludes after careful review of the record that the alleged acts or omissions did not constitute ineffective assistance of counsel. *Jones v. State,* 243 Ga. 820 (256 SE2d 907) (1979).

While other counsel, had they represented appellant, may have exercised different judgment, the fact that the trial counsel chose to try the case in the manner in which it was tried and made certain difficult decisions regarding the defense tactics to be employed with which appellant and his present counsel now disagree, does not require a finding that the representation below was so inadequate as to amount to a denial of effective assistance of counsel. *Estes v. Perkins,* 225 Ga. 268 (167 SE2d 588) (1969).

It is apparent from the record that the defense counsel was familiar with the facts of appellant's case and that he filed numerous pre-trial motions and argued them vigorously. At trial, he conducted an extensive voir dire examination, cross examined witnesses and argued in defense of his client. He objected during trial and presented evidence in mitigation during the sentencing phase. See *Lewis v. State,* 246 Ga. 101 (268 SE2d 915) (1980).

Appellant argues that trial counsel should have objected to the introduction of prior convictions during the pre-sentence hearing. He contends that one of these convictions was rendered when the appellant was fifteen years old, and therefore, a juvenile. He also argues that the Oklahoma statute defining males as juveniles until the age of sixteen and females as juveniles until the age of eighteen was declared to be in violation of the equal protection clause of the United States Constitution. Therefore, the convictions were invalid. However, in Case No. C960, assault with a deadly weapon, the sentence plainly showed that the appellant was represented by counsel and was tried as an adult. In Case No. C1053, the appellant was tried also as an adult and was age seventeen. He was represented by counsel in that case. The same is true in Case No. C1118, armed robbery. Furthermore, the records were properly authenticated in that the prior convictions were proved by the records of the Oklahoma Department of Corrections and such records bore the attestation of the custodian and of the Secretary of State. Code Ann. § 38-630; see *Smith v. Hart,* 243 Ga. 59 (252 SE2d 470) (1979). The fact that the records of the Department of Corrections of Oklahoma contained multiple photographs commonly known as mug shots of the appellant was not grounds to exclude them. The records of prior convictions being admissible, it follows that appellant's retained counsel was not ineffective for failing to object to them. Appellant contends that his retained counsel should have voir dired prospective jurors on racial prejudice in that the county in which he was being

tried was predominantly white while the appellant was a black man. Furthermore, appellant asserts that counsel should have stricken a juror who stated on voir dire that he heard privileged information as to the case but that he could not remember it. Trial counsel extensively voir dired prospective jurors and the range of voir dire examination and the use of peremptory strikes are matters that address themselves to trial tactics. Trial counsel submitted to the court a pre-evidentiary charge which instructed the jury that opening statements were to assist the jury in understanding the evidence but that such statements were not evidence and were not to be considered evidence unless they were found to be supported by the evidence. See *Sears v. Smith,* 221 Ga. 47 (6) (142 SE2d 792) (1965). The trial court in its charge at the close of the guilt-innocence phase of the trial charged as to the weight to be given argument of counsel. The pre-evidentiary charge when considered as a whole was favorable to the defendant, and it is apparent that trial counsel benefited his client by submitting the same to the court.

Although it is noted herein that the trial counsel filed numerous pre-trial motions, he did not move to suppress evidence obtained from the search of appellant's van. After the arrest, local authorities impounded appellant's van and inventoried it at approximately 8:00 that morning. The items in the van were photographed and logged on an inventory property sheet and were secured in the property room. The items recovered from the van were numerous tools, two holsters, a briefcase containing cartridges, a tract of the Black Christian Nationalist Church, a Bible dictionary and other papers. These items were introduced in evidence; however, had these items been suppressed, the State under the evidence in this case would still have proven each and every essential allegation of the crime alleged. Furthermore, under the evidence of this case, the search of appellant's van was a lawful inventory search and a motion to suppress would not lie. See *Mooney v. State,* 243 Ga. 373 (254 SE2d 337) (1979). In addition, certain items were in the van which were favorable to the defense and trial counsel insisted upon their introduction.

It is apparent that counsel was faced with overwhelming evidence of guilt. He vigorously represented his client and sought in every manner to avoid the death penalty. As noted in *Pitts v. Glass,* 231 Ga. 638 (203 SE2d 515) (1974), effective counsel does not mean "errorless counsel and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance."

2. After his arrest, appellant was put inside the patrol car which had the front window rolled down. Wilbur May, his co-defendant,

was handcuffed and was at the front of the patrol car. After the victim's body was discovered in back of the store, the private security guard asked the co-defendant where the guns were. He responded, "I can show you where they are at." Appellant's counsel objected on the grounds of hearsay and now assigns error to the admission of the statement. We find no merit in this contention. The statement of the co-defendant May was part of the narrative of a course of events. It did not have the effect of being probative on the guilt or innocence of the defendant. *Crowder v. State,* 237 Ga. 141 (227 SE2d 230) (1976), cited by appellant, is not applicable in that the statement of May was not a confession nor did he identify other conspirators or describe their participation. Furthermore, the record shows that the appellant was in a position to hear this statement of his co-defendant. The appellant's second enumeration of error is without merit. *Moore v. State,* 240 Ga. 210 (240 SE2d 68) (1977).

3. The statement of the appellant given subsequent to his arrest to the effect that he was coerced and forced to enter the Tenneco service station by Wilbur May was introduced during trial. Appellant's counsel requested a charge on duress even though his client did not testify. The trial court out of an abundance of caution, in that the statement raised the defense of duress, gave the requested charge. Error cannot now be enumerated upon the giving of the charge requested by defendant's counsel. *Patterson v. State,* 233 Ga. 724 (213 SE2d 612) (1975).

4. In his fifth enumeration of error, the appellant contends that Code Ann. § 27-2534.1 (b) (7) is unconstitutionally vague. This enumeration is without merit. Gregg v. Georgia, 428 U. S. 153 (96 SC 2909, 2971, 49 LE2d 859) (1976); *Hance v. State,* 245 Ga. 856 (268 SE2d 339) (1980); *Cape v. State,* 246 Ga. 520 (1980).

5. In his sixth enumeration of error, the appellant contends that the court erred in admitting the testimony of the victim's wife and that the testimony was cumulative and not relevant to the issues at trial. The appellant argues that the testimony of Mrs. Tackett was elicited for the sole purpose of playing on the sympathy and prejudice of the jury. The trial court limited the testimony of Mrs. Tackett upon objection by defense counsel to the employment of her husband, the reason that he was at the store at the time of the robbery, and the phone call from the Cobb County Police Department. The witness was asked the usual preliminary questions as to marriage, children, and employment. We do not find such preliminary questions to be prejudicial. The remainder of her testimony was relevant to the issues at trial. Relevant testimony is admissible even though cumulative. *Sprouse v. State,* 242 Ga. 831 (252 SE2d 173) (1979).

6. There is no merit in appellant's contention that armed robbery is no longer a capital felony for the purpose of applying the aggravating circumstance provision of Code Ann. § 27-2534.1 (b) (2). *Peek v. State,* 239 Ga. 422 (238 SE2d 12) (1977); *Davis v. State,* 241 Ga. 376 (247 SE2d 45) (1978).

7. In his eighth enumeration of error, the appellant contends that the use of prior convictions in the sentencing phase of the trial as provided by Code Ann. § 27-2503, amounted to an ex post facto application of law. Appellant argues that since his prior convictions occurred before the enactment of Code Ann. § 27-2503 that he was deprived of a substantial right. This argument has been raised before and decided adversely to the appellant. *Todd v. State,* 228 Ga. 746 (187 SE2d 831) (1972). See *Fowler v. State,* 235 Ga. 535 (221 SE2d 9) (1975).

8. Appellant's ninth and tenth enumerations of error more properly concern themselves with sentence review and will be addressed in that portion of this opinion.

## *Sentence Review.*

In our sentence review, we have considered the aggravating circumstances found by the jury and the evidence concerning the crime and the defendant. We have reviewed the sentence as required by Ga. L. 1973, p. 159 et seq. (Code Ann. § 27-2537 (c) (1-3)) as we have in each case involving the death penalty under this statute. We find that the evidence factually substantiates the verdict and supports the finding of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

9. Appellant asserts that the sentence of death was imposed under the influence of passion, prejudice and other arbitrary factors because of the cumulative effect of incompetent, inadmissible evidence submitted by the State. He also argues that the jury was impassioned because of the introduction into evidence of the tract of the Black Christian Nationalist Church. After a complete review of the transcript and record of this case as mandated by our statute, we do not agree. The evidence submitted by the State being found admissible, the appellant's enumeration has no merit. The tract of the Black Christian Nationalist Church was contained in the brief case which belonged to appellant and which was found in the van. It was introduced into evidence during the guilt-innocence phase of the trial without objection. Appellant's religious affiliations were introduced in mitigation during the sentencing phase of the trial. The record does not contain any indication that the jury did not follow its oath. In fact, the finding of the aggravated circumstances set forth below was a logical and rational result based upon the nature of the

crime. We find that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

10. The jury found the following aggravating circumstances:

(a) "The offense of murder was committed while the offender was engaged in the commission of another capital felony, to wit: armed robbery." Code Ann. § 27-2534.1 (b) (2), and

(b) "The offense of murder was outrageously vile, horrible or inhuman in that it involved torture, depravity of mind, and an aggravated battery to the victim." Code Ann. § 27-2534.1 (b) (7).

Under the evidence in this case, the appellant and his co-defendant sought to rob the victim at gunpoint. The proceeds of the store were found in close proximity to where the appellant and his co-defendant were arrested. While the appellant denied participation in the crime in his testimony during the sentencing phase of the trial, the appellant stated that Mr. May asked "the victim where the money was," the victim said "there is no money," and "a shot or two was fired." The victim then told Mr. May where the money was. The co-defendant then got the tray with the money and got a plastic bag for it. Medical testimony established that the victim had been struck in the face, shot three times, twice in the hip, once in the face and then while lying helpless on the ground, shot in the back of the head. A fifth bullet wound was observed in the victim's thumb. When the arresting officer arrived on the scene, he heard three quick shots, a pause, and a fourth. He did not hear the first shot, because he arrived after the victim was forced to tell where the money was. Under the facts of this case, the victim was subjected to serious physical abuse prior to death. As we held in *Hance v. State,* supra, torture as the term is used in Code Ann. § 27-2534.1 (b) (7) occurs when the victim is subjected, as in this case, to serious physical abuse prior to death. A defendant who tortures the victim or subjects the victim to an aggravated battery before killing the victim can be found to have a depraved mind.

By any rational standard, the murder was outrageously or wantonly vile, horrible or inhuman. It was the execution-style murder of an unarmed and wounded armed robbery victim. In this respect, this murder is distinguishable from ordinary murders in which the death penalty is not appropriate. *Hance v. State,* supra; Godfrey v. Georgia, 446 U. S. —— (100 SC 1759, 64 LE2d 398) (1980). The victim did not die instantaneously, but was subjected to a gunshot wound in order to force him to tell where the money was. Thereafter, he was subjected to multiple gunshot wounds which within themselves were not fatal until lying on the floor helpless he was executed with a single shot to the back of the head. The victim was not related to either the appellant or his co-defendant. He did not

give any reason to assault him, nor was the victim subjecting them to any emotional trauma. The appellant and his co-defendant attempted to hide the crime. See Godfrey v. Georgia, supra. We find the evidence factually substantiates and supports the finding of the two statutory aggravating circumstances and the sentence of death by a rational trier of fact beyond a reasonable doubt. Jackson v. Virginia, supra.

11. The appellant asserts that the death penalty must be set aside because the trial court's instructions to the jury in the sentencing phase of the trial did not provide guidance in the interpretation of Code Ann. § 27-2534.1 (b) (7), citing the recent case of Godfrey v. Georgia, supra. While the trial court did not give a limited charge on § 27-2534.1 (b) (7), we hold that a limited charge was not required under the facts of this case. Godfrey v. Georgia, supra, *Hance v. State,* supra; *Cape v. State,* supra.

12. We have thoroughly reviewed the instructions of the trial court during the sentencing phase of the trial and find the charge was not subject to the defects dealt with in *Fleming v. State,* 240 Ga. 142 (240 SE2d 37) (1977), and *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977).

In reviewing the death penalty in this case, we have considered the cases appealed to this court since January 1, 1970, in which a death or life sentence was imposed. The appellant under the evidence of this case actively participated in the robbery and murder of the victim. Two weapons were found, both of which had been fired and both the appellant and his co-defendant were shown to have recently fired a weapon. We find the following similar cases listed in the Appendix support the affirmance of the death penalty. Appellant's sentence to death for murder is not excessive or disproportionate to the penalty imposed in similar cases considering the crime and the defendant.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 14, 1980 —
REHEARING DENIED JANUARY 19, 1981.

*Judson R. Knighton,* for appellant.
*Thomas J. Charron, District Attorney, Mary E. Staley, Assistant District Attorney, Arthur K. Bolton, Attorney General, Susan V. Boleyn, Assistant Attorney General,* for appellee.

APPENDIX.

*Lingo v. State,* 226 Ga. 496 (175 SE2d 657) (1970); *Johnson v. State,* 226 Ga. 511 (175 SE2d 840) (1970); *Pass v. State,* 227 Ga. 730

(182 SE2d 779) (1971); *Hunter v. State,* 231 Ga. 494 (202 SE2d 441) (1973); *Gregg v. State,* 233 Ga. 117 (210 SE2d 659) (1974); *Moore v. State,* 233 Ga. 861 (213 SE2d 829) (1975); *Floyd v. State,* 233 Ga. 280 (210 SE2d 810) (1974); *Prevatte v. State,* 233 Ga. 929 (214 SE2d 365) (1975); *Mitchell v. State,* 234 Ga. 160 (214 SE2d 900) (1975); *Tamplin v. State,* 235 Ga. 20 (218 SE2d 779) (1975); *Berryhill v. State,* 235 Ga. 549 (221 SE2d 185) (1975); *Barrow v. State,* 235 Ga. 635 (221 SE2d 416) (1975); *Brown v. State,* 235 Ga. 644 (220 SE2d 922) (1975); *Dobbs v. State,* 236 Ga. 427 (224 SE2d 3) (1976); *Arnold v. State,* 236 Ga. 534 (224 SE2d 386) (1976); *Pulliam v. State,* 236 Ga. 460 (224 SE2d 8) (1976); *Hawes v. State,* 240 Ga. 327 (240 SE2d 833) (1977); *Corn v. State,* 240 Ga. 130 (240 SE2d 694) (1977); *Amadeo v. State,* 243 Ga. 627 (255 SE2d 718) (1979); *Jones v. State,* 243 Ga. 820 (256 SE2d 907) (1979); *Hamilton v. State,* 244 Ga. 145 (259 SE2d 81) (1979); *Cobb v. State,* 244 Ga. 344 (260 SE2d 60) (1979); *Dampier v. State,* 245 Ga. 427 (265 SE2d 565) (1980).