Van Roosevelt SOLOMON,
Petitioner-Appellant,

v.

Ralph KEMP, Warden, Georgia Diagnostic & Classification Center,
Respondent-Appellee.

No. 83–8723.

United States Court of Appeals,
Eleventh Circuit.

June 12, 1984.

George Kendall, Atlanta, Ga., Margaret Marshall, Leonard M. Singer, Boston, Mass., for petitioner-appellant.

Susan V. Boleyn, Atlanta, Ga., for respondent-appellee.

Before RONEY, FAY and CLARK, Circuit Judges.

FAY, Circuit Judge:

Petitioner, Van Roosevelt Solomon, appeals from the denial by the United States District Court for the Northern District of Georgia of his petition for a writ of habeas corpus. Petitioner was convicted in 1979 of murder in Georgia state court and was sentenced to death. Solomon raises six issues before this court: (1) whether the prosecutor impermissibly commented on petitioner's post-arrest silence and failure to testify in violation of petitioner's constitutional rights as enunciated in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); (2) whether petitioner was denied his right to the assistance of reasonably effective counsel at the culpability and the sentencing phases of his trial; (3) whether the trial court's conspiracy instruction relieved the state of the burden of proving that petitioner intended to or did in fact kill the victim; (4) whether the prosecution rendered improper and prejudicial comments during the closing argument of the trial's sentencing phase so as to render the trial fundamentally unfair; (5) whether a prospective juror was properly excused for cause under the standards of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968); and (6) whether the district court properly concluded that petitioner has failed to establish that his sentence of death was the product of the arbitrary and discriminatory application of the Georgia death penalty. After a careful review of the entire record, including petitioner's state trial transcript and the transcript of his federal habeas evidentiary hearing, we affirm the district court's decision with respect to each of petitioner's claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was convicted of first-degree murder and armed robbery for events surrounding the attempted robbery of a convenience store in June, 1979. The victim, Roger Tackett, was the manager of a Tenneco self-service gasoline station and convenience store in Cobb County, Georgia. On the night of the murder Tackett drove to the station at approximately 11:20 p.m. in order to lock the store after closing. Tackett escorted the Tenneco employees to their cars, locked the store and remained to catch up on some paperwork.

At approximately 1:50 a.m. on June 17, 1979, Officer Roy Kendle of the Cobb County Police Department noticed an unattended green Dodge automobile parked in front of the store with its driver's door open. As Officer Kendle began to investigate, he noticed a black male, subsequently identified as co-indictee Wilbur May, open the rear storeroom door from inside the store, look out, and then quickly close the door. Thinking this unusual, Officer Kendle approached the front door of the store. Finding the door unlocked, he drew his gun and entered the store. He then heard three closely-spaced gunshots, a pause, and then another shot. Officer Kendle ordered the person in the storeroom to come out. Receiving no response, he opened the storeroom door and discovered two black males, soon identified as Wilbur May and petitioner, standing near a walk-in cooler. He placed both persons under arrest. When asked what May and he were doing there, petitioner replied that they were "burglarizing." Officer Kendle took them into custody, radioed for assistance and gave them their *Miranda* warnings.

Officer Kendle placed petitioner in the rear seat of his car and May stood by the

front of the car. Shortly thereafter, Officer Kendle was joined at the scene by Alex Woodard, a private security guard working in the vicinity who had heard Officer Kendle's radio call. Woodard proceeded to guard petitioner and May at gunpoint while Officer Kendle surveyed the scene. Pursuant to further investigation, Officer Kendle learned that the store manager, Roger Tackett, should have been at the store. Woodard then began questioning May, who shortly thereafter revealed that a man had been shot in the rear of the store. Officer Kendle and Woodard then broke into the storeroom, whereupon they discovered the victim's body. The time interval between the arrest and the discovery of the body was approximately twenty to thirty-five minutes.

The police recovered from the storeroom a cash register drawer wrapped in a garbage bag, two bullets, and two guns. One gun contained four discharged rounds and the other two discharged rounds. They also discovered a green Chevrolet van parked on a dirt path near the store; inside the van were burglary tools and two holsters. The police subsequently determined that this van belonged to petitioner.

Three hours after his arrest, petitioner gave a statement at the police station in which he said that May had tied him up, put him in the van and later forced him into the store. While at the police station, swabbings from the front and back of both hands of petitioner and May were taken. Although petitioner was wearing gloves when he was taken into custody, he was not wearing these upon his arrival at the police station. Officer Kendle subsequently found petitioner's gloves stuffed under the front seat of his patrol car.

Petitioner was tried before a jury upon the counts of armed robbery and murder in the Superior Court of Cobb County, Georgia. At trial a witness from the Georgia State Crime Laboratory testified that analysis of the swabbings showed that both petitioner and May had recently fired guns. The chief medical examiner for Cobb County testified that the victim received five bullet wounds, all but one of which were inflicted in close succession.

After the state rested its case, the defense presented no evidence before resting. During instructions the jury was charged, *inter alia,* on malice murder and general conspiracy. After deliberations the jury returned a general verdict of guilty.

At the sentencing phase of the trial, the state introduced evidence of three prior convictions. The defense presented testimony from four character witnesses and petitioner testified. The jury returned a sentence of death and petitioner was sentenced on September 27, 1979.

Petitioner's conviction and sentence were affirmed and a motion for rehearing was denied by the Georgia Supreme Court. *Solomon v. State,* 247 Ga. 27, 277 S.E.2d 1 (1980). The United States Supreme Court denied Solomon's petition for a writ of certiorari. *Solomon v. Georgia,* 451 U.S. 1011, 101 S.Ct. 2348, 68 L.Ed.2d 863 (1981).

On August 26, 1981, Solomon filed a petition for a writ of habeas corpus in the Superior Court of Butts County, Georgia. Following an evidentiary hearing, the court on February 18, 1982 entered an unpublished order denying all relief. An application for a certificate of probable cause before the Georgia Supreme Court was denied in an unpublished order on April 20, 1982. On April 28, 1983, the Superior Court of Cobb County signed a death warrant ordering Solomon's execution on May 11, 1983.

On May 6, 1983, Solomon filed an application for federal habeas corpus relief pursuant to 28 U.S.C. § 2254 (1980) and a motion for a stay of execution in the United States District Court for the Northern District of Georgia. The district court immediately entered a stay. Following an evidentiary hearing conducted on August 2, 1983, the court on September 6, 1983 entered an order denying the application for a writ and lifting its previously issued stay of execution.

On October 11, 1983, the district court issued a certificate of probable cause to

authorize appeal pursuant to 28 U.S.C. § 2253 (1980) and a stay of execution pending appeal. Solomon on the same day filed a notice of appeal before this court.

## II. PROSECUTORIAL COMMENT

Petitioner contends that the prosecutor, during the course of petitioner's trial, improperly commented on petitioner's post-arrest silence and on his failure to testify at trial so as to violate petitioner's constitutional rights under the principles enunciated in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) and *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Finding no constitutional error in the prosecutor's references to petitioner's silence, we find no basis for relief relative to this claim.

### A. The *Doyle* Issue

■ During direct examination of Officer Kendle, the prosecutor asked, "Prior to your discovering the body after you broke into the storeroom door, did Mr. Van Roosevelt Solomon ever tell you anything about that?" R.Vol. I at 312. Petitioner's counsel immediately objected and requested a *Jackson—Denno* hearing. *See Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). A hearing was held out of the jury's presence during which Officer Kendle established that petitioner's only comment at the crime scene was a statement that he and May had been "burglarizing." When the jury returned to the courtroom, the prosecutor again asked of the officer, "Officer Kendle, I believe the question I asked was did Solomon make any other statements other than the one you have already testified to concerning the body in the store prior to your discovering it independently?" The officer's response was "No, sir." R.Vol. I at 315.

Petitioner also points to several references made by the prosecutor during closing argument as to petitioner's failure to mention the body in support of his contention that the prosecutor's comments were deliberate and prejudicial references to petitioner's post-arrest silence.[1]

Petitioner correctly notes that the Supreme Court in *Doyle* held that a criminal defendant's silence following his receipt of *Miranda* warnings cannot be later used to impeach a defense presented by the defendant at trial. However, the record in this case reveals no indication that the comments were calculated to raise an inference of guilt or to impeach a later exculpatory story. To the contrary, it is reasonable to conclude that the purpose of the question and remarks was to establish that petitioner had never given the police information concerning the victim's body. The comments in this area were dispositive of petitioner's *intent* to murder the victim (to cause his death). As petitioner's defense at trial was based upon a claim of lack of intent, it would unnecessarily inhibit the fact-finding process for all comments regarding petitioner's post-arrest silence to be condemned *per se*. Under these peculiar facts, the comments were proper.

1. The prosecutor argued the following, *inter alia*:

The evidence shows what? Both guns fired, both guns causing injuries to Roger Tackett, both defendants shooting the firearms. Neither defendant admitted to this brutal murder.

They are getting their money, their dirty deed is over, they have killed Roger Tackett, and even while he was laying there dying, they didn't have the decency—we ought to try to save him by telling the police. Thirty minutes went by and then Van Solomon never told them about Roger Tackett. It was finally Wilbur May who admitted, thirty minutes later, that a man was lying down in the storeroom.

Van Solomon has got to be the man who knew what was going on and was in control. His van, his burglary tools, his gun. Never said a word about, first, to speak up to the police. There is no question about that, ladies and gentlemen, no question about that.

Now, ladies and gentlemen, I am always reminded, when there are two defendants and one is talking and the other is trying to get their story straight, the saying by Thomas Jefferson when he says: "The sword of law should never fall but on those whose guilt is so apparent as to be pronounced by their friends as well as their foes."

*See* R.Vol. VII at 1366.

## B. The *Griffin* Issue

The evidence produced at trial failed to indicate which of the two defendants shot the victim. Two weapons were found at the crime scene, both of which had been fired. During closing argument the prosecutor stated: "We don't know which defendant had which gun. The only person who can tell us that is Van Solomon." R.Vol. III at 607.

It is well established that the fifth amendment right not to incriminate oneself guarantees an accused not only the right not to testify during his trial but also the right to prevent the prosecution from commenting upon such a failure to testify. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The standard for determining whether there has been an improper comment upon a defendant's right not to testify at trial is "whether the statement was manifestly intended or was of such a character that a jury would naturally and necessarily take it to be a comment on the failure of an accused to testify." *United States v. Dearden,* 546 F.2d 622, 625 (5th Cir.), *cert. denied,* 434 U.S. 902, 98 S.Ct. 295, 54 L.Ed.2d 188 (1977).[2] *See also Williams v. Wainwright,* 673 F.2d 1182 (11th Cir.1982). In applying this test, the court must "look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon the jury." *United States v. Forrest,* 620 F.2d 446, 455 (5th Cir.1980), *quoting Samuels v. United States,* 398 F.2d 964, 967 (5th Cir.1968), *cert. denied,* 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969).

Applying these standards to this case, it is clear that the prosecutor's statement was not manifestly intended to be, nor would a jury rationally and necessarily construe it as such, a comment on silence. We find the statement to be rather an attempt to explain why the state could not match each defendant with one specific gun

and to stress that this fact was not crucial to the state's case. Although the statement was an indirect reference to petitioner's silence, taken in context it is an objective evaluation of the state of the evidence. As such, it is permissible under *Griffin.*

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that he was denied his sixth and fourteenth amendment right to the effective assistance of counsel at both the culpability and sentencing phases of his trial. We reject each of petitioner's allegations of error and agree with the district court that petitioner's counsel was reasonably effective throughout both phases of the proceedings.

The sixth amendment guarantees criminal defendants the right to counsel reasonably likely to render and rendering reasonably effective assistance given the totality of the circumstances. *See, e.g., Strickland v. Washington,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.), *modified on other grounds,* 289 F.2d 928 (5th Cir. 1961) *(en banc),* cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). Whether counsel has rendered adequate assistance is a mixed question of fact and law requiring the application of legal principles to the historical facts of the case. *See Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *Young v. Zant,* 677 F.2d 792, 798 (11th Cir.1982). The state court's conclusion on this mixed question is not entitled to a presumption of correctness under 28 U.S.C.A. § 2254(d) (1980). *Goodwin v. Balkcom,* 684 F.2d 794, 804 (11th Cir.1982), *cert. denied,* 460 U.S. 1098, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983). However, the state court's findings of historical fact on the issue are entitled to a presumption of correctness. *Sumner v. Mata,* 449 U.S. 539, 547, 101 S.Ct. 764, 769, 66 L.Ed.2d 722 (1981).

---

**2.** In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) *(en banc),* this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

■■ In order to prevail on this claim, petitioner must show first, that counsel's performance was deficient and second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *Strickland,* —— U.S. at ——, 104 S.Ct. at 2064. In evaluating this claim, it must be kept in mind that effective counsel is not errorless counsel, and that we should not rely on hindsight in measuring ineffectiveness. *Id.* at ——, 104 S.Ct. at 2065.

### A. Pre-Trial Investigation

Petitioner claims first that his counsel was ineffective in that he did not conduct an adequate pre-trial investigation. Petitioner specifically claims that his attorney, Herbert Stein, did not talk to all of the state's witnesses, did not file a motion for expenses to hire an investigator and expert witnesses, and did not discuss with petitioner whether petitioner had funds to hire a private investigator. Petitioner's primary allegation is that his counsel's failure to hire ballistics and other experts constituted ineffective assistance because petitioner's strongest defense was to assert that he was not the "trigger-man."

■■ Failure to conduct adequate pre-trial investigation can support an ineffective assistance of counsel claim. *Adams v. Balkcom,* 688 F.2d 734, 739 (11th Cir.1982). However, in order for tactical decisions to amount to ineffective assistance, they must be so ill-chosen as to render the trial fundamentally unfair. *Strickland,* —— U.S. at ——, 104 S.Ct. at 2067. Furthermore, in the course of a pre-trial investigation, "counsel for a criminal defendant is not required to pursue every path until it bears fruit or until all available hope withers." *Lovett v. Florida,* 627 F.2d 706 (5th Cir. 1980).

■■ The facts of this case reveal that counsel's alleged failures to investigate were merely the result of reasoned tactical

decisions. Petitioner's counsel testified at the state habeas corpus hearing that in the course of his investigation he did visit the scene of the crime, speak with petitioner and his family, gain limited access to petitioner's file, view the autopsy report and receive scientific reports. He further testified that because he had been retained, he did not think it appropriate nor necessary to file a motion for funds to hire an investigator. R.Vol. II at 1070. Further, petitioner has failed to show that his trial counsel's failure to hire expert witnesses worked to his "actual prejudice." *See Strickland, supra.* The evidence against petitioner was overwhelming in this case, i.e. it established that neutron activation tests revealed that petitioner and his co-defendant were both found to have recently fired weapons. *See Solomon v. State,* 247 Ga. at 28, 277 S.E.2d at 1.[3]

### B. Counsel's Actions During Trial

■ Petitioner states that his counsel was ineffective during the culpability phase of the trial in four ways. He first contends that his counsel was ineffective in failing to object to the use of petitioner's post-arrest statement. However, the record indicates that petitioner's counsel moved for a *Jackson-Denno* hearing for the purpose of determining the voluntariness of the statement. Petitioner testified at the hearing that he had been read his rights, had understood them and had not been coerced; the trial court then ruled that the post-arrest statement had been voluntarily given. We therefore find that the decision to attempt to exclude the statement by establishing that it had been given involuntarily was a reasoned tactical decision on the part of trial counsel. The failure to object thereafter affords no basis for habeas relief.

Petitioner contends also that his trial counsel was ineffective in that counsel

---

**3.** The record shows the following time sequence regarding the neutron activation tests: Officer Kendle first heard shots being fired at the store at 1:50 a.m., on June 17, 1979; petitioner was arrested at 2:15 a.m.; the swabbings were taken from petitioner's hands at 3:40 a.m.; and the tests were conducted at the Georgia state crime laboratory on June 19. *See* R.Vol. II at 282; Vol. II at 324; Vol. II at 485; and Vol. II at 494.

failed to object to the prosecutor's comments regarding petitioner's post-arrest silence. As stated above, we find that the prosecutor did not refer to petitioner's silence in order to raise an inference of guilt or to impeach a later exculpatory explanation so as to violate petitioner's rights under *Doyle* or *Griffin*. Because the comments were not improper, it would be anomalous to find counsel ineffective for failing to object to the introduction of such statements.

Petitioner further claims that his trial counsel was ineffective for failing to continue an objection originally made to the testimony of the victim's wife and to ask for a mistrial upon the end of her testimony. The record shows that when Mrs. Tackett was called to the stand, petitioner's counsel moved that she not be permitted to testify since she had not been present at the crime scene and because her testimony would be cumulative. The court denied this motion and allowed her testimony.

Mrs. Tackett testified as to her employment and home life with the victim. Petitioner's attorney at this point objected to the relevancy of the witness' testimony. His objection was overruled. Mrs. Tackett then testified regarding the night of the murder, stating that her husband had been working late that night in order to spend the next day, Father's Day, with his family. When the prosecutor continued to question Mrs. Tackett regarding the night of the murder, petitioner's counsel objected to the materiality of her testimony. His objection was then sustained and the witness excused.

 Under Georgia law, any evidence which logically tends to prove or disprove a material fact at issue and every act or circumstance seeming to elucidate a material issue or issues is relevant. *See Jones v. Smith*, 160 Ga.App. 147, 286 S.E.2d 478 (1981); *Glo-Ann Plastic Industries, Inc. v. Peak Textiles, Inc.*, 134 Ga.App. 924, 216

S.E.2d 715 (1975). A trial court has wide discretion in determining the relevancy and materiality of evidence in a case. *See, e.g., Richardson v. McClung*, 559 F.2d 395 (5th Cir.1977). We do not agree with petitioner's contention that Mrs. Tackett's testimony was irrelevant and immaterial, calculated to arouse passion against the accused. It is clear that the trial court in this case acted reasonably and well within its broad discretion in concluding that the preliminary questions as to marriage, children and employment were not prejudicial and that the remainder of Mrs. Tackett's testimony was relevant to the issues at trial. Because we find that Mrs. Tackett's testimony was admissible, counsel cannot be held ineffective for failing to object to the testimony or for not requesting a mistrial.

 Petitioner also claims that his attorney failed to respond to at least three requests by the trial judge to check the factual accuracy of the trial judge's report.[4] At the state habeas hearing, petitioner's attorney testified that he did not respond to the trial judge's repeated requests because he was "disgusted" with the judge's prior actions and because he didn't believe that his response would make a difference. He stated that he had not considered the possibility that his actions might prejudice his client's right to a full and impartial hearing on the motion for a new trial.

We find that although the performance of petitioner's counsel as to the trial judge's report may have been less than ideal, it was not, when judged in light of "all of the circumstances," *see Strickland,* —— U.S. ——, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), inadequate. Moreover, petitioner has failed to demonstrate that the alleged errors caused him the "actual prejudice" required to obtain habeas relief.

C. The Sentencing Phase

 Finally, petitioner contends that counsel was ineffective because he made

---

4. The trial judge's report admittedly failed to indicate that armed robbery, a felony offense, was tried simultaneously with the murder charge. Petitioner also alleges, without specifying, that several "mitigating circumstances" presented during the sentencing phase were omitted from the court's final report.

only a superficial investigation of potential character witnesses and witnesses in mitigation during the sentencing phase of his trial. The record reveals, however, that at least three character witnesses were called to testify on petitioner's behalf during the sentencing phase. The state habeas court likewise found that petitioner talked to other potential witnesses and decided that it would not be advantageous to present their testimony. Counsel's decision to present some character witnesses and to exclude others notwithstanding their willingness to testify was a tactical decision, reasonable under the circumstances. While attorneys may disagree as to how many or what particular witnesses to call, such is the stuff out of which trials are made. We find no merit to petitioner's contention.

## IV. THE CONSPIRACY INSTRUCTION

■■■■■ Petitioner was charged with the crime of malice murder. *See* O.C.G.A. § 16–5–1 (1982). He contends that the jury instructions on conspiracy to commit robbery violated his constitutional rights in that they relieved the state of the burden of proving beyond a reasonable doubt his specific intent to kill. *See* O.C.G.A. § 16–5–1(a), (b) (1982) (intent an essential element of murder).[5] We disagree with peti-

tioner, concluding that the jury was not misled into imputing intent to kill from a finding of conspiracy to commit armed robbery.

The jury was instructed as follows:

Now, it is contended by the state that the defendant committed the crime charged in this indictment when he, together with another, conspired to commit a crime and that the charge in this indictment was an incidental probable consequence of the crime agreed to by them.... If a conspiracy is established beyond a reasonable doubt, then any act done by any of the parties pursuant to such agreement is, in contemplation of the law, the act of each of them and they are jointly responsible therefor. This means that everything done by any of the conspirators in accomplishing or in furtherance of the common purpose is deemed to have been done by each of them.

R.Vol. III at 635–36. *See also* O.C.G.A. § 16–4–8 (1983). The court then immediately charged the jury as to the elements of murder, stating as follows:

Now, the defendant in this case is charged with the offense of murder. I charge you that a person commits murder when he unlawfully and with malice

---

5. The state initially contends that the issue of the allegedly burden-shifting conspiracy instructions has been deliberately bypassed by the petitioner in that it has never been raised in the state courts. However, in the petition for habeas corpus filed in the Superior Court of Butts County, petitioner's counsel clearly mentioned the unconstitutionality of imposing the death penalty upon petitioner when intent to take life was not established:

This case presents a question expressly reserved by the Court in *Lockett v. Ohio*, 438 U.S. 586, 609 n. 16 [98 S.Ct. 2954, 2967 n. 16, 57 L.Ed.2d 973] (1978), to wit: whether a sentence of death may constitutionally be imposed upon an offender absent a jury finding that the offender himself took life or intended to take life.

R.Vol. III at 530.
Although the state court petition does not directly mention the contested conspiracy instructions, it does discuss the uncertainty of petitioner's intent to kill. And intent is precisely the issue raised in petitioner's federal habeas corpus petition.

The standard for determining that an issue has been deliberately bypassed is rigid. *Montgomery v. Hopper*, 488 F.2d 877, 879 (5th Cir. 1973). Proof of bypass typically involves a showing that the prisoner secured some tactical advantage by not pressing his claim earlier. *Buckelew v. United States*, 575 F.2d 515, 519 (5th Cir.1978). Moreover, in most cases a deliberate bypass must itself be proved at an evidentiary hearing, unless it is clearly shown on the record, i.e., such as when the trial transcript reveals an express waiver of the issue by defense counsel. *Coco v. United States*, 569 F.2d 367, 370–71 (5th Cir.1978). We find the alleged bypass of petitioner's claim to be unintentional, particularly since the issue was previously raised in the state habeas petition. *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981). *See also Buckelew v. United States, supra*. We find no indication from the trial record that petitioner deliberately bypassed his claim relative to the conspiracy instructions.

aforethought, either express or implied, causes the death of another human being. To constitute murder, the homicide must have been committed with malice. Legal malice is not necessarily ill will or hatred, but is the unlawful intention to kill, without justification, excuse or mitigation.

R.Vol. III at 636–37.

Petitioner argues that the conspiracy charge invited the jury to find him guilty of murder by permitting it to attribute to him the acts of his co-conspirator in a conspiracy to commit armed robbery. Petitioner urges that the jury thus may have convicted him of murder absent a finding of intent to kill. *See* O.C.G.A. § 16-5-1 (1983); *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

 In resolving an issue as to whether the state has been relieved of its burden of proving each essential element of the crime charged, the jury instructions must be examined in their entirety. The crucial inquiry is whether the charge as a whole fairly instructs the jury on the law to be applied. *See Jones v. Kemp,* 678 F.2d 929 (11th Cir.1982), *cert. denied,* 459 U.S. 1113, 103 S.Ct. 745, 74 L.Ed.2d 965 (1983). *See also Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). Looking to the overall charge in this case, we find it unlikely that the jury was misled into imputing intent to kill from a conspiracy to commit robbery. The charge stresses that the crime charged—malice murder—must have been within the scope of the conspiracy before it could be charged to any co-conspirator; the court specifically stated that the acts for which petitioner would be held responsible for must have been pursuant to a conspiracy agreement. It is difficult to imagine that the jury in this case thought itself free to convict petitioner of malice murder based upon only a conspiracy to commit armed robbery. This conclusion is further buttressed by the overwhelming evidence implicating petitioner in the victim's murder. *Cf. Stanley v. Zant,* 697 F.2d 955 (11th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984) (evidence that petitioner had been an "active participant" in a robbery and killing sufficient to sustain felony murder conviction notwithstanding claim of lack of intent to kill).

## V. PROSECUTION'S CLOSING ARGUMENT

Petitioner contends that persistent misconduct by the prosecutor during his closing argument at the sentencing phase of the state proceedings denied him a fair trial. Specifically, petitioner maintains that the prosecutor repeatedly interjected his personal views that the death penalty was appropriate in petitioner's case and diminished the jurors' sense of responsibility in urging imposition of the death penalty.[6] We disagree, finding that the prosecu-

---

6. Petitioner points to the following comments by the prosecutor as improper:

At the outset let me say that I do not stand here today with the least bit of reluctance to ask you to return a verdict of the death penalty. I have no qualms about it. I have no concern that the evidence does not meet the aggravating circumstances and I feel strongly that it is the only punishment in this case.

Now ladies and gentlemen, I want to talk to you about the death penalty and capital punishment. It is one of our pressing issues you hear so much about and nobody can talk more about it than prosecutors who have to be involved every day with those life and death decisions. I don't take them lightly. I don't think I have lost any sleep on this one. And you make a decision of this sort you don't take life cheap and I have to divorce myself or take myself out of the thoughts of the victim and family who I have to talk to and explain the legal ramifications to, and I have to start thinking about the defendant. Am I really justified in asking for the death penalty and am I really doing what is just? So, that issue I struggle with every day on my job. The teachers and the philosophers and the sociologists that you all hear that are so vocal for or against the death penalty, they are looking at it abstractly. I have to deal with it every single day. I am the person who has to ask you to take another life in the interest of justice. And it doesn't bother me at all in this case. I am outraged by this crime. The only punishment is the death penalty, the only punishment that fits the crime.

R.Vol. III at 698–99.

tor's comments did not reach a level which made the trial fundamentally unfair.

■ The standard for reviewing a claim of prosecutorial misconduct is whether the prosecutor's actions are of such a nature as to render the trial fundamentally unfair. *Donnelly v. DeChristoforo*, 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974); *Hance v. Zant*, 696 F.2d 940 (11th Cir.1983), *cert. denied*, —— U.S. ——, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983). This court recently in *Hance*, 696 F.2d at 940, and in *Brooks v. Francis*, 716 F.2d 780 (11th Cir.1983), *reh'g en banc granted*, 728 F.2d 1358 (11th Cir.1984), enunciated the permissible scope of jury argument, emphasizing that it is a prosecutor's "fervent appeal to the fears and emotions of an already aroused jury" which renders a sentencing hearing constitutionally intolerable. *See Hance*, 696 F.2d at 951; *Brooks*, 716 F.2d at 789. The court in *Brooks* further specifically held that "we will not condemn a discussion of whether or not a sentence of death is appropriate in a given case because that is the legal issue being decided in the sentencing phase ... under Georgia law." 716 F.2d at 789.

■ The district attorney's argument in this case falls well within the permissible parameters of *Hance* and *Brooks*. The portion of the district attorney's argument cited by petitioner merely expresses the state's opinion that the evidence in the case supports a finding of aggravating circumstances so as to authorize the imposition of the death penalty. The remainder of the argument is likewise merely an attempt to stress the importance of the jury's task by means of comparison with the awesome responsibility of the prosecutor in capital cases.

## VI. THE *WITHERSPOON* ISSUE

■ Petitioner contends that the exclusion of prospective juror Barbara Brendle was improper under the standards of *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Petitioner maintains specifically that the exclusion was improper because Mrs. Brendle did not make "unmistakable clear," as *Witherspoon* requires, that

> (1) [she] would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the case before then or (2) [her] attitude toward the death penalty would prevent her from making an impartial decision as to the defendant's *guilt*.

391 U.S. at 522–3 n. 21, 88 S.Ct. at 1777 n. 21 (emphasis in original).

In this case, Mrs. Brendle repeatedly gave a bottom line response that regardless of the circumstances she would not vote for the death penalty. The final portion of her voir dire is as follows:

THE COURT: Are you telling me that you would automatically vote against capital punishment?

MRS. BRENDLE: Yes.

THE COURT: Regardless of what the evidence might be?

MRS. BRENDLE: Yes, sir. I could find guilty or not guilty but I could not vote for capital punishment.

THE COURT: Are your feelings toward capital punishment such that you would never vote to impose the death penalty regardless of the facts in the case?

MRS. BRENDLE: Yes, sir.

THE COURT: All right.

MR. CHARRON: I challenge for cause.

THE COURT: You are challenging her for cause?

MR. CHARRON: Yes, Your Honor.

THE COURT: Do you want to question her?

MR. STEIN: Mrs. Brendle, do you say that you could make a fair determination òf the guilt or innocence of the case?

MRS. BRENDLE: Yes; as far as finding him guilty or not guilty, but the second part where I would have any responsibility in causing—I do not vote—again, the death penalty, I just firmly do not believe in it, for about fifteen years, it is not

something I just decided since I came into the courtroom.

R.Vol. I at 196.

A quick review of the examination of prospective juror Brendle shows that when asked the key question by the court, i.e., whether regardless of the facts and circumstances Mrs. Brendle could impose capital punishment, Mrs. Brendle unequivocally answered on two occasions that she could not. She would make no vote that might result in the death penalty being imposed, i.e., "where I would have any responsibility in causing." The district court therefore properly found that Mrs. Brendle was excluded for cause.

## VII. PROPORTIONALITY REVIEW

Petitioner's final contention is that the district court erred in its conclusion that he had failed to support his claim of arbitrariness or discrimination in the application of the Georgia death penalty statute and that the state court has conducted an adequate proportionality review. We disagree, finding both the district court's review of the arbitrariness claim and the Supreme Court of Georgia's review of the petitioner's sentence to be adequate so as to afford petitioner due process.

The district court afforded petitioner a full and fair opportunity to present at an evidentiary hearing his argument that Georgia administers its death penalty statute in an arbitrary and discriminatory manner. We agree with the district court that there is no evidence in the record to support petitioner's claims of arbitrariness.

Petitioner acknowledges that he has offered no evidence in support of these contentions but suggests the district court should have held the matter in abeyance pending the then scheduled hearing in the case of *McCleskey v. Zant*, 580 F.Supp. 338 (N.D.Ga.1984), *hearing en banc granted,* 729 F.2d 1293 (11th Cir., 1984). The re-

quest was denied by the district judge and we find no abuse of discretion.[7]

We likewise find the state court's proportionality review to be adequate. Georgia's capital sentencing law requires its supreme court to conduct an expedited review of every death sentence. O.C.G.A. § 17–10–35. In reviewing the sentence, the court must determine "[w]hether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." O.C.G.A. § 17–10–35(c)(3). The court is required to "include in its decision a reference to those similar cases which it took into consideration." O.C.G.A. § 17–10–35(e). The court explicitly followed the Georgia sentencing law in reviewing petitioner's sentence and we therefore find that due process has been afforded petitioner on his proportionality claim. *See Solomon v. State,* 247 Ga. 27, 277 S.E.2d 1 (1980). There is thus certainly no question that the principles recently enunciated of *Pulley v. Harris,* —— U.S. ——, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), were adhered to in petitioner's proportionality review.

## VIII. CONCLUSION

We have carefully considered each claim which petitioner has presented in this appeal. We find no constitutional error warranting the issuance of the writ. Accordingly, the judgment of the district court, denying the writ, is AFFIRMED.

---

7. Unlike *McCleskey* or *Spencer v. Zant,* 715 F.2d 1562 (11th Cir.1983) *argued en banc,* 729 F.2d 1293 (11th Cir.1984), no evidence was introduced or proffered. Neither was there a motion to transfer or consolidate as in *Ross v. Hopper,* 716 F.2d 1528 (11th Cir.1983), *reh'g en banc granted,* 729 F.2d 1293 (11th Cir.1984). There was no attempt to stipulate as to the evidence being made a part of this record. In sum, this record contains only unsupported allegations. Such are not sufficient.