S96P1662. JONES v. THE STATE.

(481 SE2d 821)

THOMPSON, Justice.

Ashley Jones was convicted of the malice murder of Keith Holland and also felony murder, armed robbery, theft by taking a motor vehicle, and misdemeanor theft by taking.[1] The jury recommended the death penalty, finding the following aggravating circumstances: the murder was committed during the commission of an armed robbery; and the murder was outrageously and wantonly vile, horrible and inhuman in that it involved torture, depravity of mind, or aggravated battery to the victim.[2] The trial court sentenced Jones to death and Jones appeals. We affirm.

The jury was authorized to find that Jones and his co-defendant, Allen Bunner,[3] began the crime spree which led to the death of Keith Holland on the night before the murder, when they stole four cases of beer from a convenience store in Ware County. The co-defendants fled in an automobile with three other companions, who were waiting for them outside the store. The group spent the remainder of the night driving around aimlessly and drinking the stolen beer, until their car

[1] The crimes occurred on March 31, 1993. Jones was indicted in Ware County on April 7, 1993. The State filed its notice of intent to seek the death penalty on July 22, 1993. Jones was tried before a jury in Coffee County pursuant to a change of venue and was convicted on all counts and sentenced to death for malice murder on June 14, 1995. Jones was also sentenced to life in prison for armed robbery; 20 years in prison for theft by taking a motor vehicle; and 12 months in prison for misdemeanor theft by taking, all sentences to run consecutive to each other. Jones filed a motion for new trial on July 14, 1995, which was denied by the trial court on June 20, 1996. Jones filed a notice of appeal on July 1, 1996. The case was docketed in this Court on July 11, 1996 and was orally argued on October 21, 1996.

[2] OCGA § 17-10-30 (b) (2) & (7).

[3] Bunner was tried separately from Jones and received a sentence of life without parole. He did not appeal his conviction.

broke down, and Jones and Bunner left the others, stating they were going to find a truck.

The co-defendants stole a Ford truck, belonging to Rudolph Melton, which was parked in front of Melton's residence. After driving around for several more hours in the stolen truck, they arrived at the home of the victim, Keith Holland. Bunner knocked on Holland's front door at approximately 5:00 a.m. and asked Holland's wife Mamie for assistance, on the pretext that the truck's battery was dead. Mamie Holland woke her husband, and he went outside to assist Bunner. As Holland was leaning over to look in the engine compartment of the truck, Jones struck him in the head from behind with a sledge hammer.

Mamie Holland witnessed the first blow from her dining room window and reacted by screaming for Jones to stop and by banging on the window. Jones turned and looked at her but continued to pound the victim, inflicting at least six blows to the head and face, all of which were potentially fatal. Prior to leaving in the victim's truck, Jones got out of the vehicle and hit the victim again, while he was lying on the ground. EMS workers arrived within minutes after the co-defendants' departure. Because of the injuries to the victim's face, EMS workers were unable to perform CPR or intubate the victim, and he died before reaching the hospital.

Jones and Bunner drove to Florida in the victim's truck. They tossed Holland's personal belongings out of the truck along the way, and pawned two chain saws belonging to Melton. Police learned of their whereabouts through telephone calls made by the co-defendants to a friend in Georgia, and they were arrested at a welcome station south of the Georgia-Florida line. The victim's truck, which Jones and Bunner had burned, was found in the woods a short distance away.

The evidence was sufficient to enable rational jurors to find Jones guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. Jones contends that the trial court erred in denying his motion for a second change of venue. Pursuant to Jones' first motion for change of venue, his trial was moved to Coffee County. On the first day of voir dire, the jurors were divided into panels of 12, and after the first juror was called, the remaining 11 jurors were placed in the same jury room. In response to preliminary questioning by the trial court, prospective juror number eight, Michael Maxwell, stated that he had opined to the other prospective jurors in the jury room that Jones was guilty, and many of the other jurors in the room had also expressed their opinions regarding Jones' guilt. Jones moved to disqualify Maxwell, moved for a mistrial, and renewed his motion for

change of venue. The trial court denied Jones' motions for mistrial and change of venue but granted Jones' requests to disqualify Maxwell and to re-examine the jurors who had been questioned before Maxwell. The trial court also instructed the jurors not to discuss the case among themselves.

(a) Jones contends that the trial court erred in denying his motion for change of venue under *Jones v. State*, 261 Ga. 665 (409 SE2d 642) (1991). To justify a change of venue under *Jones*, a defendant must show either that the trial setting was inherently prejudicial as a result of pretrial publicity, or actual bias on the part of the individual jurors. See *Fugate v. State*, 263 Ga. 260 (7) (431 SE2d 104) (1993). Jones does not allege that the trial setting in Coffee County was inherently prejudicial. With regard to the prejudice of individual jurors, Jones offers no proof that a high percentage of jurors had prior knowledge or had formed opinions about the case, based on what they had read or heard, or that there was a relatively high excusal rate. See *Woodbury v. State*, 264 Ga. 31 (2) (440 SE2d 461) (1994); *Childs v. State*, 257 Ga. 243 (2) (357 SE2d 48) (1987); *Chancey v. State*, 256 Ga. 415 (5) (349 SE2d 717) (1986). Absent proof of factors such as these, Jones was not entitled to a change of venue, and therefore the trial court did not abuse its discretion by refusing to grant the motion. Id.

(b) Jones contends that the trial court abused its discretion in denying his motion for mistrial as a result of prospective juror Maxwell's allegations that the jurors in his jury room expressed opinions regarding Jones' guilt. Jones thus asserts that the jury pool was tainted. At the time of Jones' motion, the only suggestion that the jury was tainted came from Maxwell. The trial court, in response to Maxwell's allegations, immediately took remedial measures to protect Jones' rights by disqualifying Maxwell, allowing Jones to re-examine the other jurors, who had previously been qualified, and instructing the jurors not to discuss the case among themselves. See, e.g., *Rogers v. State*, 256 Ga. 139 (2) (344 SE2d 644) (1986); *Parker v. State*, 255 Ga. 167 (3) (336 SE2d 242) (1985). Only three of the jurors who were in the jury room at the time the improper comments were made were qualified for the jury panel. These jurors stated they had formed no fixed opinion regarding Jones' guilt or innocence and could decide the case on the evidence presented at trial and the instructions of the trial court. *Norton v. State*, 263 Ga. 448 (435 SE2d 30) (1993). Jones did not move to disqualify these jurors.

The granting of a motion for mistrial is within the discretion of the trial court, and the trial court's ruling will not be disturbed on appeal unless a mistrial is required to preserve Jones' right to a fair trial. *Cowards v. State*, 266 Ga. 191 (3) (465 SE2d 677) (1996). Absent evidence to the contrary, we find the remedial measures taken by the

trial court were sufficient to ensure that Jones received a fair trial, and the trial court did not abuse its discretion in denying Jones' motion.

2. Jones contends that the trial court erred in denying his motion for mistrial based on improper "victim impact" testimony, given by the victim's wife, Mamie Holland, during the sentencing phase of trial. Jones particularly objects to what he deems to be an excessive display of emotion by Holland while testifying, and he contends that the trial court should have required the district attorney to advise the victim's family to avoid such displays. Jones also argues that the prosecutor's leading questions to Holland were improper.

(a) Under OCGA § 17-10-1.2, and *Livingston v. State*, 264 Ga. 402 (1) (444 SE2d 748) (1994), victim impact evidence is limited to the impact of the offense upon the victim's family or community. In accordance with the provisions of the statute, a hearing was held ten days prior to trial to determine the scope of the testimony allowed and the particular questions asked. The transcript of that hearing reveals that the trial court ruled that Holland's testimony would be brief and the questions allowed would be specifically related to Jones' culpability. Holland was permitted to testify that she was married to the victim for 21 years; that she witnessed his brutal murder by Jones; that she still suffers because of the crime; and that she fears for herself and her family. The questions, which were relatively few, were approved by the trial court prior to trial, and were phrased by the district attorney. Holland's responses were generally limited to several words. Based on our review of the record, we do not find that the content or the extent of Holland's testimony was improper.

(b) Jones argues that Holland's testimony was inflammatory because Holland sobbed while testifying and suggests Holland's emotional reaction was rehearsed, since she displayed less emotion when she testified before the trial court out of the presence of the jury. Under OCGA § 17-10-1.2 (a) (1), victim impact evidence "shall be permitted only in such a manner and to such a degree as not to inflame or unduly prejudice the jury." We have granted the trial court unusually broad discretion in admitting such evidence, in part because "we presume that trial courts will follow the dictates of the statute in not admitting inflammatory or unduly prejudicial evidence . . ." *Livingston*, supra at 405. Our reliance on the trial court's sound discretion is particularly appropriate when the objection is to the manner in which the witness testifies, since the trial court can see and hear the juror while we must rely on a cold record. The record in this case reflects only that the victim sobbed while testifying. There is no indication that her testimony was prolonged, or that her display of emotion disrupted the trial.

Under OCGA § 17-10-35 (c) (1), a sentence of death cannot be

"imposed under the influence of passion, prejudice or any other arbitrary factor"; however, the passion proscribed by our law refers to that engendered by racial or religious prejudice or other arbitrary factors. *Livingston,* supra at 404, citing *Conner v. State,* 251 Ga. 113, 121 (303 SE2d 266) (1983). The passion or emotion shown in this case is not the product of any arbitrary factor but the direct result of Jones' own actions. The trial court's denial of Jones' motion for mistrial as a result of Holland's testimony was not an abuse of discretion.

(c) Jones argues that the trial court should have issued an order requiring that the district attorney warn the victim's family members against any visible display of emotion that would be disruptive, as the trial court did in the trial of John Mark Waldrip. See *Livingston v. State,* 264 Ga. at 406. Although the trial court did issue such an order in that trial, we held that there is no authority for imposing such "prophylactic measures." Id. at 407. Moreover, the trial court's order in that case was directed at family members seated in the courtroom, and not family members who appeared as witnesses. Id. at 406.

(d) The trial court acted within its discretion in allowing the prosecutor to ask Mamie Holland leading questions in order to ensure that Holland's testimony remained within the parameters outlined in OCGA § 17-10-1.2 (a) (1). *Knight v. State,* 266 Ga. 47 (4) (b) (464 SE2d 201) (1995); *Ford v. State,* 232 Ga. 511 (10) (207 SE2d 494) (1974).

3. Jones contends that the trial court erred in denying his motion for mistrial when, during closing argument in the sentencing phase of trial, the district attorney referred to the fact that Jones' counsel was appointed. The granting of a motion for mistrial is within the discretion of the trial court, and the trial court's ruling will not be disturbed on appeal unless a mistrial is required to preserve a defendant's right to a fair trial. *Cowards v. State,* 266 Ga. at 194. We do not find that this statement by the prosecutor denied Jones a fair trial. Construing the comment in the context of the argument as a whole, it is clear that it was not the prosecutor's manifest intention to comment on Jones' status as an indigent prisoner. On the contrary, the prosecutor was merely arguing that although Jones had not suffered any violation of his rights, and the law provides for the punishment being sought in his case, Jones had violated the victim's rights by acting as his judge, jury, and executioner. Arguments of this type are not improper. See, e.g., *Thornton v. State,* 264 Ga. 563 (4) (c) (449 SE2d 98) (1994). The trial court did not abuse its discretion in denying Jones' motion for mistrial.

4. The jury found the following aggravating circumstances: OCGA § 17-10-30 (b) (2) (the murder was committed while the

defendant was engaged in the capital felony of armed robbery); OCGA § 17-10-30 (b) (7) (the murder was outrageously and wantonly vile, horrible and inhuman in that it involved torture, depravity of mind, or aggravated battery). The evidence supports these findings. OCGA § 17-10-35 (c) (2).

5. Jones' death sentence was not imposed as the result of impermissible passion, prejudice or other arbitrary factor. OCGA § 17-10-35 (c) (1). The death sentence is not excessive or disproportionate to penalties imposed in similar cases, considering both the crime and the defendant. The similar cases listed in the Appendix support the imposition of the death sentence in this case.

*Judgment affirmed. All the Justices concur.*

APPENDIX.

*Christenson v. State,* 262 Ga. 638 (423 SE2d 252) (1992); *Ferrell v. State,* 261 Ga. 115 (401 SE2d 741) (1991); *Stripling v. State,* 261 Ga. 1 (401 SE2d 500) (1991); *Romine v. State,* 256 Ga. 521 (350 SE2d 446) (1986); *Cargill v. State,* 255 Ga. 616 (340 SE2d 891) (1986); *Ingram v. State,* 253 Ga. 622 (323 SE2d 801) (1984); *Spivey v. State,* 253 Ga. 187 (319 SE2d 420) (1984); *Putman v. State,* 251 Ga. 605 (308 SE2d 145) (1983); *Wilson v. State,* 250 Ga. 630 (300 SE2d 640) (1983); *Berryhill v. State,* 249 Ga. 442 (291 SE2d 685) (1982); *Dick v. State,* 246 Ga. 697 (273 SE2d 124) (1980). See also *Lee v. State,* 258 Ga. 82 (365 SE2d 99) (1988); *Ford v. State,* 257 Ga. 461 (360 SE2d 258) (1987); *Beck v. State,* 255 Ga. 483 (340 SE2d 9) (1986); *Roberts v. State,* 252 Ga. 227 (314 SE2d 83) (1984); *Mincey v. State,* 251 Ga. 255 (304 SE2d 882) (1983); *Solomon v. State,* 247 Ga. 27 (277 SE2d 1) (1981).

DECIDED MARCH 10, 1997.

*John R. Thigpen, Sr.,* for appellant.
*Richard E. Currie, District Attorney, Michael J. Bowers, Attorney General, Wesley S. Horney, Assistant Attorney General,* for appellee.