CSX TRANSPORTATION, INC., National Railroad Passenger Corporation, Plaintiffs-Appellants,

v.

The CITY OF GARDEN CITY, Defendant-Third-Party, Plaintiff-Appellee,

ARCO, Inc., Third-Party Defendant.

No. 99-12799.

United States Court of Appeals,

Eleventh Circuit.

Dec. 15, 2000.

Appeal from the United States District Court for the Southern District of Georgia, (No. 98-00223-CV-4), B. Avant Edenfield, Judge.

Before ANDERSON, Chief Judge, and DUBINA and HILL, Circuit Judges.

HILL, Circuit Judge:

CSX Transportation, Inc. and the National Railroad Passenger Corporation filed this action against the City of Garden City, Georgia seeking indemnification in connection with a train/truck collision on the city's construction site. The district court entered summary judgment for the defendant city based upon municipal immunity. CSX Transportation, Inc. and the National Railroad Passenger Corporation bring this appeal.

I.

In 1996, the City of Garden City, Georgia (Garden City or the City) decided to install water and sewer lines along the public rights-of-way that ran across, under, and parallel to CSX Transportation, Inc.'s (CSX) railroad tracks. The City contracted with CSX to use CSX's rights-of-ways and agreed to indemnify CSX for any damages arising out of the City's use of the rights-of-way. Under the contract, the City agreed to maintain insurance to cover the indemnity obligations it had assumed.

Garden City employed ARCO, Inc. as the general contractor for this project which employed CARLCO Trucking, Inc. as a sub-contractor. On October 9, 1997, a CARLCO employee drove a tractor-trailer truck to the City's work site to remove equipment. As he crossed CSX's tracks, his truck stalled on the tracks where it was hit by a National Railroad Passenger Corporation (Amtrak) passenger train. CSX paid damages to passengers on the train and sued Garden City for indemnification under their agreement. Garden City filed a third-party claim against its contractor, ARCO.

Sometime later, the City filed a motion for summary judgment against CSX, asserting that it was

immune to CSX's claim for damages for a number of reasons. The district court agreed with the City[1] and, on July 12, 1999, granted it summary judgment. The court noted, however, that Garden City's third-party complaint against ARCO for indemnification was still pending and "the Clerk should not close this case." Subsequently, Garden City with the consent of ARCO and approval of the court, voluntarily dismissed without prejudice its third-party claim against ARCO. CSX and Amtrak filed this appeal.

Concerned about the finality of the summary judgment, this court, on its own motion, directed the parties to brief and argue the issue of our jurisdiction to hear this case.

II.

To be appealable, an order must either be final or fall into a specific class of interlocutory orders that are made appealable by statute or jurisprudential exception. *See* 28 U.S.C. §§ 1291, 1292; *Atlantic Fed. Sav. & Loan Ass'n v. Blythe Eastman Paine Webber, Inc.,* 890 F.2d 371, 375-76 (11th Cir.1989). A final decision is " 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Pitney Bowes, Inc. v. Mestre,* 701 F.2d 1365, 1368 (11th Cir.1983) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945)). A judgment that does not effectively terminate the litigation is not final or immediately appealable unless the district court certifies the judgment for immediate appeal under Fed.R.Civ.P. 54(b). *See* 28 U.S.C. § 1291; *Williams v. Bishop,* 732 F.2d 885, 885-86 (11th Cir.1984); *In re Yarn Processing Patent Validity Litigation,* 680 F.2d 1338, 1339-40 (11th Cir.1982).

We have held many times that a partial adjudication on the merits, followed by a voluntary dismissal without prejudice of a pending claim, does not effectively terminate the litigation and, therefore, does not satisfy the finality requirement of 28 U.S.C. § 1291. *Ryan v. Occidental Petroleum Corp.,* 577 F.2d 298, 302-03 (5th Cir.1978). *See also State Treasurer v. Barry,* 168 F.3d 8, 11-13 (11th Cir.1999); *Construction Aggregates, Ltd. v. Forest Commodities Corp.,* 147 F.3d 1334, 1336-37 (11th Cir.1998); *Mesa v. United States,* 61 F.3d 20 (11th Cir.1995). That is what happened in this case. The district court's July 12 entry of summary judgment was a partial adjudication on the merits. It was followed by the voluntary dismissal without prejudice of the remaining pending claim—Garden City's third-party claim against ARCO. Therefore, if *Ryan* applies, this series of events did not terminate the litigation. 577 F.2d at 302-03 (summary judgment plus a voluntary dismissal without prejudice of a remaining claim does not effectively terminate litigation).

---

[1]Although for a different reason, as we discuss later.

As a threshold matter, then, there does not appear to be a final, appealable order in this case. Inasmuch as neither party had the court certify the July 12 summary judgment for appeal under Rule 54(b), we do not have jurisdiction to hear this appeal unless there is some other reason why the judgment should be considered final.

CSX argues that we have jurisdiction under the *Jetco* exception to the finality rule. *Jetco Electronic Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1231 (5th Cir.1973). Under this exception, a series of court orders, considered together, may be said to constitute a final judgment if they effectively terminate the litigation. *Id.* In this case, the summary judgment plus the entry of the voluntary dismissal effectively terminated this litigation, leaving nothing else for the district court to do, which it recognized by closing the case. CSX argues that this series of court orders *may* be considered a final judgment.

Furthermore, CSX argues that this series of orders *should* be considered a final judgment because if they are not, Garden City and ARCO will receive a windfall. If there is no final judgment, CSX will forever lose its right to appeal in this case.[2]

This result, CSX argues, is not required by *Ryan* and its progeny. The common theme of these cases is that jurisdiction cannot be manufactured. For example, when a district court enters an adverse, but otherwise non-appealable, ruling against a party, that party may seek to appeal the ruling immediately by dismissing without prejudice his remaining claims—sort of warehousing them for later revival if needed—attempting to manufacture a final, appealable judgment. We have consistently rejected such attempts to obtain appellate review of an otherwise non-final order. *See State Treasurer,* 168 F.3d at 11-12, 16 (plaintiff and defendant stipulated to the dismissal without prejudice of remaining counterclaim and plaintiff sought to appeal); *Construction Aggregates,* 147 F.3d at 1335-36 (defendant dismissed remaining counterclaim without prejudice and then sought to appeal); *Mesa,* 61 F.3d at 21 (plaintiff dismissed remaining claims without prejudice and then sought to appeal); *Ryan,* 577 F.2d at 300 (plaintiff dismissed remaining claims without prejudice and sought to appeal).

CSX points out that it is not guilty here of such an attempt to manufacture jurisdiction. After the summary judgment, it had no remaining claims. Nor did it participate in any way in Garden City and ARCO's

---

[2]CSX could ask the district court to certify the July 12 order and judgment as final under Fed.R.Civ.P. 54(b), but there is no guarantee that the court will grant their request. *See State Treasurer,* 168 F.3d at 20 (Cox, J. specially concurring) (the entry of judgment under 54(b) is not a matter of right and is committed to the sound discretion of the district court).

agreement to dismiss without prejudice Garden City's remaining third-party claim.

This case is the mirror image of *Ryan,* where the parties attempted to manufacture appealability. Here, Garden City and ARCO appear to have undertaken to manufacture non-appealability. If there is no final appealable order in the case, CSX will be deprived of any appellate review of the dismissal of its lawsuit and will be left holding the proverbial (and unenviable) "bag."

We have noted this possibility before. In *State Treasurer,* we expressed concern that under the *Ryan* rule, an appellant not involved in the decision to dismiss a remaining claim without prejudice and, therefore, not guilty of conspiring to create jurisdiction, would nonetheless lose his right to appeal. 168 F.3d at 21 (Cox, J., specially concurring). We said then that "[w]hatever the wisdom of punishing crafty litigants, it is hard to justify punishing their victims." *Id.* CSX urges us to transform this concern into a new rule for this circuit.

There is some authority for this result. In *Schoenfeld v. Babbitt,* 168 F.3d 1257, 1265-66 (11th Cir.1999), we held that where the appellant had dismissed its claims against a defendant without prejudice *before* the district court entered judgment for the remaining defendant, *Ryan* did not apply and that order was final and appealable.

In this case, however, the voluntary dismissal followed the entry of the non-final order and, therefore, is asserted to come under the rule of *Ryan.* Even if the rule is harsh, we are bound to follow it if it applies to this case. The issue is whether it does apply.[3] We conclude that it does not.

In this case, a summary judgment was entered against the plaintiff. Then, the defendant and the third-party defendant stipulated to the dismissal of the remaining third-party claim. The plaintiff did not participate in any way in the voluntary dismissal of the third-party claim. The defendant and third-party defendant agreed to that disposition. As nothing remained pending in the lawsuit, the district court ordered the Clerk to close the case. The plaintiff then filed a notice of appeal of the judgment which had been entered against it prior to the voluntary dismissal.

Under these circumstances, the rule of *Ryan* is inapplicable. Because the appellant did not participate in the voluntary dismissal of the remaining claims, there was no collusion between it and the parties dismissing the remaining claim. Therefore, there was no attempt to manufacture jurisdiction. On the contrary, the plaintiff/appellant stands to lose all right to appeal if the rule of *Ryan* applies under these

---

[3]Garden City concedes that whether the rule of *Ryan* applies to render voluntary dismissals of third-party claims non-final is an issue of first impression in this circuit.

circumstances. Additionally, in the future, parties could deliberately manipulate the proceedings to make the rule of *Ryan* apply to cut off their adversary's right to appeal.[4]

We conclude that *Ryan* was not intended to apply to the circumstances of this case. The voluntary dismissal, with or without prejudice, of a defendant's remaining third-party claim in an otherwise terminated lawsuit does not bar the plaintiff's right to appeal a judgment against it. Under these circumstances, the summary judgment plus the voluntary dismissal of the remaining claim in the case satisfies the finality requirement of Rule 54(b) for the purpose of terminating the litigation. *See Jetco,* 473 F.2d at 1231.

CSX was not involved in any way in the voluntary dismissal of Garden City's remaining third-party claim against ARCO. Accordingly, Garden City's voluntary dismissal of its third-party claim against ARCO effectively terminated this case in the district court.[5] Accordingly, we conclude that *Ryan* does not apply to this case. Nor shall we extend it to apply to this case. We have jurisdiction over this appeal.

III.

The indemnification contract between CSX and Garden City provided that the City would assume liability for all claims arising out of its construction in CSX's rights-of-way. It, in effect, required the City to waive its sovereign immunity vis-a-vis CSX in connection with any claims against CSX arising out of the City's construction project.

Georgia law, however, forbids a city from waiving its sovereign immunity unless it has insurance to fund any liability it might thereby incur.[6] The relevant statute provides:

> [a] municipal corporation shall not waive its immunity by the purchase of liability insurance ... unless the policy of insurance issued covers an occurrence for which the defense of sovereign immunity is available, and then only to the extent of the limits of such insurance policy.

O.C.G.A. § 36-33-1.

The district court concluded, therefore, that "the indemnification agreement here is barred by

---

[4]In *State Treasurer,* Judge Cox hypothesized just such a possibility: a plaintiff who seeks to cut off her opponent's right to appeal, files a meritless claim along with her valid one. Before the court can rule on her claims, she voluntarily dismisses the meritless claim. After judgment in her favor, her opponent is left with no right to appeal because, under *Ryan,* the voluntary dismissal is not a final order. 168 F.3d at 21. This scenario has, fortunately, been forestalled by our decision in *Babbitt,* 168 F.3d at 1266.

[5]Garden City argues that because it claimed indemnity including attorneys fees against ARCO, it may revive this claim at any time since its dismissal was without prejudice. We express no opinion on that issue, but note that if the City is correct, then it holds the key to the presently locked door to CSX's appeal even more firmly in its grip since it can resurrect that right by reviving and prosecuting its claim for fees to judgment.

[6]Otherwise, the taxpayers of the city would have to foot the bill.

municipal immunity—except to the extent that the City obtained insurance to cover it." Because CSX made no showing in the district court that Garden City procured or had any such insurance,[7] the district court held that its agreement to indemnify CSX was *ultra vires* and null and void. *See Precise v. City of Rossville,* 261 Ga. 210, 403 S.E.2d 47 (1991).

While on appeal, CSX moved to supplement the record in this case to show that Garden City participates in the Georgia Interlocal Risk Management Agency (GIRMA) fund which provides it coverage up to $1,000,000 against "all sums which [Garden City] shall be obligated to pay as money damages by reason of liability imposed upon [Garden City] by law or assumed by [Garden City] under contract or agreement." CSX argued in its motion that the grant of summary judgment was in error because the City does have the requisite insurance to enable it effectively to waive its sovereign immunity. A panel of this court denied the motion. CSX renewed this motion on appeal in its brief and at oral argument.

We rarely enlarge the record on appeal to include material not before the district court which has labored without the benefit of the proffered material. *See Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941); *Kemlon Products & Dev. Co. v. United States,* 646 F.2d 223, 224 (5th Cir.1981). We do, however, have the inherent equitable power to allow supplementation of the appellate record if it is in the interests of justice. *Young v. City of Augusta, Georgia ex rel DeVaney,* 59 F.3d 1160, 1168 (11th Cir.1995). This is a matter left to our discretion. *Dickerson v. Alabama,* 667 F.2d 1364, 1367 (11th Cir.1982). We decide on a case-by-case basis whether a particular appellate record should be supplemented. *Ross v. Kemp,* 785 F.2d 1467, 1474-75 (11th Cir.1986).

A primary factor which we consider in deciding a motion to supplement the record is whether acceptance of the proffered material into the record would establish beyond any doubt the proper resolution of the pending issues. *Dickerson,* 667 F.2d at 1367. In this case, the district court held that the City's failure to procure insurance rendered its agreement to indemnify CSX null and void. The existence or non-existence of insurance, then, was pivotal to the district court's resolution of this case. Under these circumstances, we are persuaded that supplementation of the record on this issue is in the interests of justice. *See Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1555 (11th Cir.1989) (a consideration of all the relevant information is

---

[7]CSX never produced any evidence to counter the City's claim that it never "purchased" the necessary insurance, and the district court held that this fact was established under S.D.Ga. Local Rule 56.1. The City did not, however, deny that it "had" insurance which might cover this claim. In fact, they identified the "insurance policy" offered now by CSX in response to an interrogatory asking for any policy which might cover the claim.

necessary to make an informed and final decision).

Garden City objects to this supplementation on the grounds that CSX knew of the GIRMA coverage prior to the entry of summary judgment and could have introduced it into the record in opposition to the City's motion for summary judgment. The City, however, never argued to the district court that its contract to indemnify CSX was void because it had not honored its agreement to procure the requisite insurance. In its motion for summary judgment, the City cited a host of reasons why its agreement to indemnify CSX was void, but lack of insurance was not one of them.[8]

The district court's opinion, which found the lack of insurance fatal to the agreement, was the first time the issue was clearly raised. Relying on an affidavit by a former mayor who stated that Garden City "did not appropriate any monies to fund the City's indemnification obligation," the trial court concluded that no insurance existed to cover the City's potential liability to CSX. Summary judgment was entered on July 12, 1999. CSX appealed on August 6, 1999, and filed the motion to supplement the record on September 23, 1999.

While we rarely exercise our authority to enlarge the appellate record, the Supreme Court has reminded the appellate courts that:

> [T]he rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules of fundamental justice.

*Hormel,* 61 S.Ct. at 721.

Under the circumstances of this case, we conclude that the motion to supplement the record should be granted. Since the district court never had the opportunity to consider what effect, if any, the City's participation in the GIRMA fund has on the City's indemnification agreement with CSX, we shall remand the case to the district court so that it may consider this fact before determining whether Garden City effectively waived its immunity by its agreement to indemnify CSX. We express no opinion on the outcome of that review.

---

[8]The City argued that the indemnity agreement was void because it: unlawfully waives the City's municipal immunity; creates an unlawfully lengthy obligation of Garden City; creates an unlawful public debt; impermissibly grants a gratuity; and violates public policy. Since we shall remand this case for reconsideration of the issue of immunity in view of the existence of the GIRMA policy, we shall not consider the issues of unlawful obligation and public debt as they may depend on the existence of insurance coverage. We find no merit in the remaining arguments advanced by the City.

IV.

We hold that the summary judgment and the voluntary dismissal considered together effectively terminated this litigation in the district court, and we have jurisdiction over this appeal. We hold that CSX's motion to supplement the record on appeal is due to be granted. Accordingly, the motion to supplement the record is GRANTED, the entry of summary judgment is VACATED and the case is REMANDED to the district court for proceedings consistent with this opinion.