[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-12537

Non-Argument Calendar

_____

TERRY NUNNELLY,

Plaintiff-Appellant,

versus

LIFE INSURANCE COMPANY OF NORTH AMERICA,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:19-cv-01383-HNJ

_____

Before JORDAN, BRANCH, and BRASHER, Circuit Judges.

PER CURIAM:

Terry Nunnelly appeals from the district court's grant of summary judgment in favor of Life Insurance Company of North America in conjunction with its denial of Nunnelly's long-term disability claim under his ERISA-governed employee benefits plan. To qualify for long-term disability under the plan, Nunnelly needed to show he was continuously disabled throughout a 26-week period. He failed to do so. Accordingly, after careful review, we affirm the district court.

## I.    Factual Background

Terry Nunnelly was employed as a mechanic by Honeywell International, Inc. ("Honeywell"), and a participant in its employee welfare benefit plan, which includes long-term disability benefits ("LTD") insured by Life Insurance Company of North America ("LINA"). Although Honeywell administers the *plan*, LINA administrates *claims* under the benefits policy, which requires the claimant to "provide the Insurance Company, at his or her own expense, satisfactory proof of Disability before benefits will be paid."

Under the policy, an employee is considered disabled "if, solely because of Injury or Sickness, he" is (1) "unable to perform the material duties of his or her Regular Occupation" and (2) "unable to earn 80% or more of his or her Indexed Earnings from

working in his or her Regular Occupation." However, the policy only requires LINA to pay disability benefits for a covered employee if, together with meeting the other terms of the policy, "[t]he [e]mployee . . . satisf[ies] the Elimination Period." In turn, the policy defines Elimination Period as "the period of time an Employee must be continuously Disabled before Disability Benefits are payable." The "period of [d]isability is not continuous if separate periods of Disability result from unrelated causes." The Elimination Period under the policy is twenty-six weeks. Accordingly, to qualify for LTD benefits an employee must be continuously disabled for twenty-six weeks from the date of the beginning of the disability.

On January 18, 2017, Nunnelly ceased working as a mechanic due to migraines.[1] A few days after he stopped working, Nunnelly filed a short-term disability ("STD") claim.[2] Later, in November 2017, Nunnelly applied for LTD benefits by phone, and LINA followed-up with a letter requesting that he provide substantiating documents, including a completed disability questionnaire. Because Nunnelly stopped working on January 18,

---

[1] The record cites both January 18 and January 19 as the first day Nunnelly missed work. In any event, the parties appear to agree that the Elimination Period ran from January 18 through July 19, 2017, which is all that matters for purposes of this appeal.

[2] The STD claim eventually settled in 2019, and the settlement agreement is at the heart of Nunnelly's motion to supplement the record, which we discuss below in greater depth.

he had to show a continuous disability from the January 18, 2017, (the first day Nunnelly missed work) through July 19, 2017 (twenty-six weeks later)—*i.e.,* throughout the Elimination Period.

Nunnelly followed up with a paper application for LTD benefits on January 8, 2018. He marked the box indicating that he suffered a disabling illness, but failed to specify the disabling condition and identified only one treating healthcare provider— Dr. Archibald, his psychiatrist. In the accompanying disability questionnaire, he asserted that he could not work due to "manic depression, bipolar [disorder], anxiety, forgetfulness, lack of coordination," the inability to hold things in his hands, lack of concentration, pain in his neck, back, arms, and legs, and chronic migraine headaches.

LINA eventually obtained records from three physicians who treated Nunnelly during the Elimination Period: Dr. Archibald, his psychiatrist, Dr. Ballard, a pain management specialist, and Dr. Rahim, a neurologist.

Dr. Archibald treated Nunnelly for bipolar disorder, anxiety, depression, and other psychiatric issues during the period between March and June 2017.[3] On May 8, 2017, Dr. Archibald indicated that due to his conditions Nunnelly could not work, and he renewed this conclusion during a follow-up visit on May 22. Dr.

---

[3] These dates only reflect the instances Dr. Archibald treated Nunnelly during the Elimination Period—but the record does show that Dr. Archibald treated Nunnelly from 2009-2017.

Archibald treated Nunnelly again on June 5, 2017, where he showed some improvement, but Dr. Archibald noted that Nunnelly was "not ready to return [to work] till hypersomnia is gone."

The June 5, 2017, appointment was the last time Dr. Archibald examined Nunnelly.  Yet on February 19, 2018, Dr. Archibald opined that based on his *June 5, 2017* examination of Nunnelly, Nunnelly remained unable to work due to high levels of panic, anxiety, auditory/visual hallucinations and mood swings.

Dr. Ballard's records revealed that she treated Nunnelly for neck, shoulder, head pain, and migraines, which Nunnelly described as "debilitating" and "incapacitating," from January to April 2017.  She noted that pain medication and a "more active lifestyle" helped relieve pain and improve daily function—encouraging Nunnelly to be "as active as possible."  Notably, Dr. Ballard did not recommend any work restrictions.

Dr. Rahim, a neurologist, treated Nunnelly for migraines and other neurological ailments including chronic neck pain in January and March 2017.[4]  Dr. Rahim initially assessed that Nunnelly could not return to work until March 6, 2017—a conclusion he reiterated in a questionnaire he submitted to LINA. In that form, Dr. Rahim also noted that Nunnelly could only return

---

[4] Dr. Rahim indicated in the questionnaire that he first treated Nunnelly for these conditions in August 2016.

on March 6 subject to certain occupational restrictions, including avoiding prolonged standing, sitting, bending, and exposure to noise and light. But after a follow-up appointment on March 2, 2017, in which Nunnelly discussed suffering from debilitating migraines, Dr. Rahim modified his return-to-work recommendation, stating that Nunnelly should not return to work until June 5, 2017. Later, on March 19, 2017, Dr. Rahim submitted another form to LINA indicating that Nunnelly could return to work—with restrictions—on June 1, 2017. The March 19 recommendation is Dr. Rahim's last evaluation on Nunnelly's ability to work.

As part of LINA's review process, two medical reviewers provided opinions about Nunnelly's work limitations based on a review of the treatment notes and provider-questionnaires. One reviewer concluded that Nunnelly did not have any functional limitations and could work unrestricted. The other determined that Nunnelly did, in fact, suffer from a psychiatric functional impairment from January 18 to June 5, 2017, but that, because Nunnelly was not treated after June 5, she could not comment on his functionality beyond that date.

After reviewing these materials, as well as those submitted as part of Nunnelly's STD claim,[5] LINA denied Nunnelly's LTD claim on January 26, 2018, concluding that the submitted medical

---

[5] Nunnelly's STD claim was denied, but he filed suit in Alabama state court and the case settled in 2019.

information did "not show evidence of a functional loss that preclude[d] [Nunnelly] from completing the essential functions of [his] occupation."    Nunnelly appealed the denial and, after obtaining independent opinions from third-party physicians—who concluded, among other things, that based on a review of Nunnelly's medical records, his inability to work from January 18, 2017 through April 19, 2017 due to severe migraines and chronic neck pain was supported by medical evidence, but found no support for any neurological restrictions or impairments beyond April 19, 2017—LINA denied his appeal in September 2018.  LINA explained that "the available medical information fails to reveal findings to support an impairment or functional loss that was present continuously . . . throughout the Elimination Period stated in the LTD policy" and, as a result, Nunnelly did not qualify as disabled under the LTD policy.

In July 2019, Nunnelly sued LINA for LTD benefits in Alabama state court.  LINA removed the case to the United States District Court for the Northern District of Alabama because Nunnelly's claim implicated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*[6] The parties filed dueling dispositive motions—Nunnelly filed a "motion for

---

[6] Nunnelly's claim arises under 29 U.S.C. § 1132(a)(1)(B), which provides beneficiaries of ERISA-governed plans a cause of action "to recover benefits due to [them] under the terms of [their] plan."

judgment on LTD benefits for inability to perform own occupation," and LINA moved for summary judgment.

In accordance with the parties' consent to the magistrate judge's exclusive jurisdiction, a magistrate judge granted LINA's motion for summary judgment, finding that its denial of Nunnelly's LTD claim was correct because the medical records did not establish that Nunnelly was disabled continuously throughout the Elimination Period.

Nunnelly timely appealed. With his appeal pending, Nunnelly filed a motion to supplement the record on appeal with a 2019 settlement agreement resolving his claim for STD benefits.

## II.     Standard of Review

"We review *de novo* a district court's grant of summary judgment." *Hill v. Emp. Benefits Admin. Comm. of Mueller Grp. LLC*, 971 F.3d 1321, 1325 (11th Cir. 2020). Summary judgment is appropriate where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.     Discussion

Nunnelly bears the burden of proving he is entitled to LTD benefits. *See Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1247 (11th Cir. 2008). We review a claim for the wrongful denial of benefits under an ERISA-governed plan using a six-step framework:

(1) [We] [a]pply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., [we] disagree[] with the administrator's decision); if it is not, then [we] end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "*de novo* wrong," then [we] determine whether [it] was vested with discretion in reviewing claims; if not, [we] end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "*de novo* wrong" and [it] was vested with discretion in reviewing claims, then [we] determine whether "reasonable" grounds supported it (hence, review [its] decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then [we] end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then [we] determine if [the administrator] operated under a conflict of interest.

(5) If there is no conflict, then [we] end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for [us] to take into account when determining whether an administrator's decision was arbitrary and capricious.

*Hill*, 971 F.3d at 1326 (quotation omitted). "At each step, the court makes a determination that results in either the progression to the next step or the end of the inquiry." *Id.* (quotation omitted).

Under the initial *de novo* review step, we analyze the claimant's eligibility for benefits as if we were the administrator "in the first instance." *Id.* So "what the actual administrator said in justifying its decision is irrelevant to this step one analysis," *id.* at 1326–27, and we are limited to "the evidence before the administrator at the time it made its decision," *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 672 (11th Cir. 2014). Our inquiry under this step is whether we would have reached the same decision as LINA. *Id.*

For the reasons explained below, we hold that LINA's denial of benefits was correct.

## A. LINA's denial of benefits decision was correct

LINA correctly denied Nunnelly's LTD claim because he failed to establish his entitlement to those benefits. We reiterate, to be eligible for LTD under the policy, a claimant must show, among other things, a continuous disability throughout the twenty-six-week elimination period. Here the elimination period ran from January 18 (Nunnelly's last day at work) to July 19, 2017 (twenty-six weeks later). And an employee is "disabled" under the policy "if, solely because of Injury or Sickness, he" is (1) "unable to perform the material duties of his or her Regular Occupation" and

(2) "unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation."

The lack of medical evidence of continuous disability lasting from January 18 through July 19, 2017 is fatal to Nunnelly's claim. Although Nunnelly produced evidence from two treating physicians, Drs. Archibald and Rahim, showing that he suffered from serious mental and physical ailments at various points during the Elimination Period, those records do not speak to Nunnelly's condition beyond June 5, 2017, the last time Dr. Archibald treated Nunnelly. As a result, Nunnelly has not shown that his disability continued from June 5 through July 19.

To be sure, Dr. Archibald opined in February 2018 that, *based on his June 5, 2017 examination*, Nunnelly "is unable to return to work due to severity of auditory/visual hallucinations, high level of panic and anxiety [and] mood swings." But, without examining Nunnelly on or after July 19, how could Dr. Archibald know, eight months later, that a disability continued for weeks after he last saw the patient?[7] Dr. Archibald's speculation does not undermine LINA's decision to deny Nunnelly LTD benefits. *See Glazer*, 524 F.3d at 1247 (holding that denial of benefits was *de*

---

[7] We note an inconsistency between Dr. Archibald's June 5, 2017, treatment notes and his February 2018 opinion that further undermines the weight of this evidence. In his June 5 notes, Dr. Archibald wrote that Nunnelly could not work because of hypersomnia (drowsiness during the day), but eight months later he claimed Nunnelly could not work because of hallucinations, panic, anxiety, and mood swings.

*novo* correct, in part, because the physician who concluded the plaintiff could not work had not examined the plaintiff in more than a year and whose opinion was contradicted by other independent doctors).

We thus hold that LINA's decision to deny LTD benefits was correct under the *de novo* standard of review. *See Hill*, 971 F.3d at 1326.[8]

---

[8] Carried with the case is Nunnelly's motion to supplement the record with a settlement agreement between Nunnelly and Honeywell on Nunnelly's STD claim—as well as correspondence relating to this claim. Nunnelly contends that these materials bar LINA from arguing that he was not continuously disabled because, as part of the settlement, Honeywell paid him STD benefits in an amount equivalent to 26 weeks. As far as we can tell, Nunnelly is raising the effect of the STD settlement agreement on his LTD claim for the first time. Setting aside whether Nunnelly abandoned his claim by not raising it below, we deny his motion to supplement the record.

"[W]e have the power" to supplement the record on appeal "in exceptional circumstances." *Vital Pharm., Inc. v. Alfieri*, 23 F.4th 1282, 1288 (11th Cir. 2022) (quotation omitted). One such circumstance is if supplementing the record "is in the interests of justice." *CSX Transp. Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000). And we have said that a "primary factor" in deciding a motion to supplement the record is whether the new material "would establish beyond any doubt the proper resolution of the pending issues." *Id.* Whether to grant a motion to supplement the record on appeal "is a matter left to our discretion." *Id.*

Supplementing the record with the new materials is not in the interest of justice nor would it establish beyond any doubt the proper resolution of the main issue in this case—whether Nunnelly was continuously disabled from January 18 to July 19, 2017. The settlement agreement says nothing about that fact. Indeed, it says nothing about why Honeywell agreed to settle Nunnelly's

### B. The district court did not err in denying Nunnelly's motion to remand to consider SSDI award

Nunnelly raises a second contention on appeal: that the district court should have remanded his case to LINA to consider a February 5, 2020, decision of the Social Security Administration awarding him disability insurance benefits ("SSDI"), so that it could base its decision on a complete administrative record. He cites to our decision in *Melech v. Life Ins. Co. of N. Am.*, which he says compels a remand of his case. *See* 739 F.3d 663 (11th Cir. 2014). We disagree and conclude the district court did not err in not remanding the case for LINA to consider the SSDI award.

First, and most importantly, the SSA rendered its award decision on February 5, 2020, sixteen months after LINA issued its

---

STD claim at all. Moreover, it expressly carves out the LTD claim from the settlement, states that Honeywell and LINA make no admission to "any liability," and forbids the parties from using the agreement "as evidence to prove any alleged wrongdoing or any other alleged wrong . . . in any action or proceeding" other than a failure to comply with the settlement agreement. Thus, the settlement agreement has no bearing on whether Nunnelly was disabled throughout the Elimination Period for purposes of LTD benefits.

So too with the correspondence between the insurance company and Nunnelly (and his counsel), many of which are already in the administrative record. These letters track the lifecycle of Nunnelly's STD claim—including a request for Nunnelly to provide more information, the denial of his claim, Nunnelly's appeal, and so on. Yet they do not speak to whether Nunnelly was continuously disabled throughout the Elimination Period nor shed any light on why the STD claim settled. Accordingly, we deny Nunnelly's motion to supplement the record.

final decision denying LTD benefits.  Indeed, the SSDI decision came months after LINA removed this lawsuit to federal court.  It is simply incorrect to assert that LINA decided Nunnelly's LTD claim on an incomplete record because a favorable SSDI award was issued over a year after the administrative appeals process concluded.

Second, and contrary to Nunnelly's argument, our decision in *Melech* undercuts his position.  In *Melech*, we remanded with instructions to reconsider a plaintiff's LTD claim because the record revealed that the plan administrator ignored an intervening SSA medical evaluation and subsequent SSDI award when it affirmed its denial on administrative appeal.   739 F.3d at 665-66, 676–77.  Crucially, we held that determining whether the plan administrator rendered its decision on a complete record was a "predicate to our ability to review the substantive decision" denying benefits. *Id.* at 673.

This case is quite unlike the situation in *Melech*.  Unlike the SSDI award in that case, which was available to the plan administrator during the administrative appeals process, Nunnelly's SSDI award was not available until over a year after LINA affirmed its denial decision.  Indeed, it came months after this lawsuit was filed.  Accordingly, the district court properly declined to remand the case for LINA to consider the SSDI award.

\*        \*        \*

In sum, we AFFIRM the district court's grant of summary judgment to LINA and DENY Nunnelly's motion to supplement the record.

**AFFIRMED.  MOTION DENIED.**