[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 20-12587

_____

ASHLEY LYNDOL JONES,

Petitioner-Appellant,

*versus*

WARDEN, GEORGIA DIAGNOSTIC AND CLASSIFICATION
PRISON,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
D.C. Docket No. 5:02-cv-00116-WTM

_____

Before JORDAN, NEWSOM, and BRANCH, Circuit Judges.

NEWSOM, Circuit Judge:

Ashley Lyndol Jones was sentenced to death in 1995 for committing murder. Since the conclusion of his direct-appeal proceedings, Jones has been seeking post-conviction relief in state and federal courts to no avail. We granted a limited certificate of appealability to determine whether Jones had ineffective assistance of counsel at trial and whether he should receive discovery or an evidentiary hearing to develop a juror-misconduct claim. With the benefit of oral argument, we affirm the district court's denial of Jones's ineffective-assistance claim. With respect to his request for discovery or an evidentiary hearing, however, we vacate and remand to the district court in light of new evidence that surfaced after argument in this Court.

I

Ashley Lyndol Jones and Allen Bunner beat Keith Holland to death with a sledgehammer in 1993. *Jones v. State*, 481 S.E.2d 821, 823 (Ga. 1997). A Georgia jury found Jones guilty of malice murder and several other crimes, and it recommended the death penalty based on the "horrible and inhuman" nature of the killing. *Id.* The trial court sentenced Jones to death. *Id.* The Georgia Supreme Court affirmed Jones's conviction and sentence. *Id.* at 826.

Following the issuance of his execution warrant, Jones filed a habeas corpus petition in state court. After unavailing state-court

proceedings, Jones sought habeas relief in federal court under 28 U.S.C. § 2254.  The district court denied Jones's petition in all respects and denied his motion for a certificate of appealability.  Jones then sought a COA from this Court, which we granted on two issues:

1.  Whether the district court erred in denying Jones's claim that his trial counsel rendered ineffective assistance in the penalty phase of his capital trial by failing to object to the prosecution's allegedly improper closing argument (a) misstating Jones's age and (b) urging the jury to draw an adverse inference from Jones's decision to exercise his constitutional rights;

2.  Whether the district court erred in denying Jones discovery or an evidentiary hearing to develop his claim of juror misconduct.

## II

We begin with Jones's ineffective-assistance claim, which is a mixed question of law and fact subject to de novo review.  *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010).  Because no state court adjudicated this claim on the merits, 28 U.S.C. § 2254(d)'s deferential standard of review doesn't apply.  *See Cone v. Bell*, 556 U.S. 449, 472 (2009).

Jones contends that his trial counsel failed to object to several improper statements that the prosecutor made during closing arguments.  For instance, the prosecutor twice misstated Jones's

age as 21 rather than 19. In the first instance, the prosecutor said: "Ashley Jones had choices. It's a free country. You do what you want to do. He was free and 21." And in the second, he remarked that it was "beyond belief that a man 21 years of age, or whatever he was at the time," would commit murder just because he was under the influence of alcohol. Jones contends that because he was only 19 at the time of the crime, the prosecutor's misstatement of his age kept the jury from considering his youth as a mitigating factor.

Separately, Jones complains about the following comments that the prosecutor made regarding the process that Jones received at trial:

> The defendant has had his rights throughout this trial and throughout the time from the day he was arrested until today. This is the lawful function of our society. He has had due process, and he has a judge who has sat over the trial to [e]nsure that his rights are protected, and he has had a lawyer who sits with him today and who has sat with him from the beginning to make sure that his rights are protected. Those rights [e]nsure his protection, but there is still the punishment that should be inflicted.
>
> ★   ★   ★
>
> He has a right to an attorney, he has the right to a jury trial, he has the right here to sit and listen to the evidence as we all have done for the last few days. He has a right to have his parents come, and friends of his

> parents, and friends of his when he was child, come and cry for him, and he has a right, when I sit down, for his lawyer to come up here and beg for his life. But on March 31st, 1993, the defendant trampled on the rights of Keith Holland.  Keith Holland had no choice in that matter.  His rights were taken away quickly at the strong, hard end of a sledge hammer and a wrench.

Jones asserts that these statements "attack[ed]" his right to counsel and "called into question the legitimacy of a system that preserved [his] rights to trial, to an impartial judge, to be present at his own trial, to present evidence in his defense and in mitigation of punishment, and his right to beg for mercy."  Br. of Appellant at 43 (citations omitted).

The district court concluded that Jones failed to establish an ineffective-assistance claim with respect to any of the several challenged statements.  With respect to the prosecutor's age-related misstatements, the court held that they "likely had a minimal effect on the jury's determination."  As for the prosecutor's comments on the rights afforded to Jones, the court reasoned that because "no controlling authority . . . finds that an argument comparing the relative rights of the victim and the defendant is a reversible error," trial counsel wasn't deficient for failing to object.

To prevail on an ineffective-assistance claim, Jones must prove two things: (1) that his trial counsel's representation "fell below an objective standard of reasonableness" under prevailing

professional norms and (2) that counsel's deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 686–88 (1984). Generally, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In particular, "for a petitioner to show that [his lawyer's] conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc). And even if the defendant can show that his counsel acted as "no competent counsel" would, he must also demonstrate that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

## A

Jones first contends that his trial counsel failed to provide constitutionally effective assistance by failing to object to the prosecutor's misstatement of his age. In *Johnson v. Texas*, the Supreme Court confirmed that "a defendant's youth is a relevant mitigating circumstance" in capital cases. 509 U.S. 350, 367 (1993). In that case, though, the defendant's age played a prominent role in his defense. Not only had the defendant's father testified that at 19 he was still immature, but his counsel had also specifically questioned potential jurors about things they had done as youths that they wouldn't do as adults and had returned to the theme of youth and change during closing arguments. *Id.* at 356–58. The Supreme

Court also emphasized in that case that youth isn't just a number but also a state—a "lack of maturity and an underdeveloped sense of responsibility" that may affect the sentencing jury's decision. *Id.* at 367. More recently, in *Jones v. Mississippi*, the Court reaffirmed that "youth matters in sentencing." 141 S. Ct. 1307, 1314 (2021). In particular, the Court held that because the defendant in that case was 15 and thus below the age of majority when he committed a murder, his life-without-parole sentence was properly applied in a discretionary (rather than mandatory) manner. *Id.* at 1314–15.

Neither *Johnson* nor *Jones* support Jones's contention that his trial counsel was constitutionally ineffective for failing to object to the prosecutor's misstatement of his age. The trial record doesn't suggest that Jones's youth played a major role in his defense, as was the case in *Johnson*. Indeed, Jones's trial counsel didn't even address Jones's age or immaturity as a mitigating factor in his closing argument. And unlike the defendant in *Jones*, the Jones in our case was over the age of majority at the time of the crime. It is entirely possible that his lawyer thought it best not to object and draw attention to his age to avoid the conclusion that at the time of the crime, Jones was an adult who was mature enough to make adult decisions. Thus, we cannot say that "no competent counsel," *Chandler*, 218 F.3d at 1315, would have acted as Jones's counsel did.

Moreover, and in any event, Jones hasn't shown a reasonable probability that an objection to the prosecutor's age-related misstatements would have changed the jury's decision. Jones's age

was established through evidence at trial, and the jury was free to weigh it against the aggravating evidence.  Jones has presented no reason to conclude that if the jury had been reminded that he was 19 during closing arguments, it wouldn't have recommended the death penalty.

## B

Next, Jones asserts that the prosecutor's comments regarding the rights that he exercised during trial were made to imply that "Jones must pay with his life for exercising his rights because he gave none to the victim." Br. of Appellant at 42.  As an initial matter, we don't find the adverse implication that Jones urges in the prosecutor's comments, which, as we read the record, were made simply to suggest that Jones had received full due process despite the heinous nature of his crime before the jury was asked to make a sentencing decision.  Though it is true that a prosecutor violates due process by implying that a defendant should be found guilty for exercising his constitutional rights—such as his right to not testify against himself, *see Griffin v. California*, 380 U.S. 609, 615 (1965)—the prosecutor made no such implication here.  *Cf., e.g.*, *United States v. McDonald*, 620 F.2d 559, 564 (5th Cir. 1980) (finding prosecutorial misconduct when prosecutor blatantly implied that the defendant was guilty because he called his lawyer).

No binding authority suggests that a defendant is deprived of a fair trial simply because the jury is reminded of the constitutional rights that have safeguarded his proceedings.  Likewise, while one of our sister circuits has criticized prosecutorial

comments comparing the relative rights of a victim and a defendant, *see Lawson v. Dixon*, 3 F.3d 743, 755 (4th Cir. 1993), at the time of Jones's trial, no court had held that such comments violate a defendant's constitutional rights. Accordingly, it was not unreasonable for Jones's lawyer to conclude that no objection was warranted. *See Ali v. U.S. Att'y Gen.*, 643 F.3d 1324, 1329 (11th Cir. 2011) ("An attorney does not render ineffective assistance when he declines to make an argument that the attorney 'reasonably believed was . . . doomed to fail.'" (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009))); *Jackson v. Herring*, 42 F.3d 1350, 1359 (11th Cir. 1995) ("To be effective within the bounds set by *Strickland*, an attorney need not anticipate changes in the law.").

The prosecutor's recounting of Jones's rights likely didn't "infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 180–81 (1986) (quotation omitted) (finding that defendant had a fair trial even though the prosecutor called him an "animal," made several offensive comments, and implied that the death penalty was the only guarantee against a future similar attack). Thus, trial counsel acted within the range of reasonableness by not raising an objection that was unlikely to succeed. And as with the age misstatements, Jones alleges nothing to suggest that if an objection had been made, the outcome of his case would have changed.

★  ★  ★

Given that it wasn't unreasonable for trial counsel not to object during the prosecutor's penalty-phase summation and that

such an objection probably wouldn't have mitigated the significant impact of the aggravating evidence presented to the jury in any event, the district court didn't err in denying Jones's ineffective-assistance claim.

## III

Jones's request for discovery or an evidentiary hearing to develop his juror-misconduct claims presents a thornier issue. The Antiterrorism and Effective Death Penalty Act dictates, as relevant here, that if a habeas petitioner "has failed to develop the factual basis of a claim in State court proceedings, the [district] court shall not hold an evidentiary hearing on the claim unless the applicant shows" that the claim relies on "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2). If, by contrast, the district court finds that the petitioner *has* exercised due diligence at the state level, Rule 6(a) of the Rules Governing § 2254 Cases applies and permits the district court to authorize discovery "for good cause." *See Williams v. Taylor*, 529 U.S. 420, 433–34 (2000) (holding that § 2254(e)(2)'s provisions barring discovery apply only if the petitioner was not reasonably diligent in trying to develop the factual record in state court). Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997) (cleaned up).

Here, Jones seeks to develop a juror-misconduct claim, which requires showing that the "extrinsic evidence known by the jury posed a reasonable possibility of prejudice to the defendant." *Boyd v. Allen*, 592 F.3d 1274, 1305 (11th Cir. 2010) (quotation omitted). The defendant "has the burden to show that the jury [was] exposed to extrinsic evidence or extrinsic contacts," and "[o]nce the defendant establishes that such exposure in fact occurred, prejudice is presumed." *Id.* (quotation omitted). The presumption of prejudice requires two prerequisites: "[1] that an extraneous contact with or by a member of the jury took place, and [2] that the contact was about the matter pending before the jury." *Id.* (quotation omitted).

In the district court, Jones alleged that two observations of a dismissed penalty-phase juror suggested extrinsic influence on the jury and warranted discovery or a hearing. The dismissed juror had seen one jury member holding a Bible and a few others drinking alcoholic beverages with bailiffs, but she declined to testify or submit any written statement regarding her observations. The district court concluded that AEDPA didn't bar further proceedings because Jones exercised "due diligence" during state-court proceedings: Jones's state habeas counsel had attempted to interview his jurors several times but were largely unsuccessful. Even so, the court found no good cause for discovery, reasoning that Jones hadn't sufficiently "show[n] reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." The court also denied an evidentiary hearing, concluding

that even if Jones's "unsupported and unsworn" allegations were true, he would not be entitled to a hearing:

> The allegation that a juror had a drink with a deputy is not direct evidence of juror misconduct because it lacks any suggestion that the juror received information to which he should not have had access. Moreover, the presence of a bible is not per se evidence of juror misconduct.

With respect to the Bible's presence in particular, the court reasoned that Jones failed to allege extraneous influence of the sort that was present in *McNair v. Campbell*, in which the jury foreman "brought a Bible into the jury room during deliberations, read aloud from it, and led the other jurors in prayer." 416 F.3d 1291, 1301 (11th Cir. 2005). By contrast, here Jones had alleged nothing more than that a jury member was seen holding a Bible at some point.

Following oral argument before us, Jones's counsel sought to supplement the record with a number of additional juror statements. After recent digitization of some documents related to Jones's state-level case, his federal habeas counsel found "work-product generated during state habeas proceedings" that was buried in "one of multiple banker's boxes of state habeas materials." The work product consists of notes taken by a paralegal on his state habeas team regarding the team's efforts to talk to jurors. In particular, one juror stated (1) that the "jury prayed together," (2) that he led jury members in prayer "before court and at night in their

hotel room," (3) that he "started bible study with the group," and (4) that "the bailiff brought them a bible in the deliberation room, but no bibles were allowed in the jury box." Another juror also alleged that the jury members "prayed each day together." Obviously, these new statements draw Jones's case closer to *McNair*.

It is not entirely clear why Jones's current federal counsel didn't find these documents earlier. They explain that their offices were in disarray when they began working on Jones's case and that they limited their review to "reading . . . the federal habeas record" instead of wading through the many banker's boxes of hard-copy documents while preparing briefs for the district court. They fail to explain why they didn't find these documents in the nearly two years that Jones's case sat pending in this Court prior to oral argument. The juror-interview notes have existed since 1998 and were in Jones's lawyers' possession all along, yet no set of lawyers discovered them.

Despite their lateness, however, because these notes *may*—under *McNair*—suggest "good cause" for discovery or an evidentiary hearing regarding juror misconduct, we granted Jones's motion to supplement the record with the new juror allegations. *See CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1330 (11th Cir. 2000) (noting that supplementation at the appellate level is permissible if "in the interests of justice," particularly where "the proffered material . . . would establish beyond any doubt the proper resolution of the pending issues"). Having done so, though, we decline to resolve the merits of this issue at this juncture for two

reasons. First, the district court didn't have the benefit of the new juror statements when making its discovery and evidentiary-hearing decisions. As a result, we are looking at a slightly different case now than the one presented to the district court. Because we are a court of review, not first view, *see CFPB v. Ocwen Fin. Corp.*, 30 F.4th 1079, 1086 (11th Cir. 2022), the district court should first decide these fact-intensive issues on the supplemented record. Second, the late discovery of the juror notes may affect the due-diligence calculus, and, relative to the district court, we are ill-equipped to make that factual determination. *See Ward*, 592 F.3d at 1159 ("[A] determination of diligence is a finding of fact which we will not disturb unless it is clearly erroneous."). On remand, the district court should decide these issues with the benefit of the new information admitted into the record.

## IV

The district court's denial of Jones's ineffective-assistance claim is **AFFIRMED**. The district court's decision denying Jones discovery or an evidentiary hearing for his juror-misconduct claim is **VACATED** and **REMANDED** to the district court to decide whether either proceeding is now warranted in light of the newly submitted evidence.